WAUKEGAN PORT DISTRICT, Petitioner-Appellee, *v.* WILLIAM P. BOORAS *et al.,* Defendants-Appellants.

Second District   No. 76-331

Opinion filed December 22, 1977.—Rehearing denied January 25, 1978.

Peter J. Nordigian, of Lonchar & Nordigian, of Waukegan, for appellants.

Joel H. Ferrin and William A. Holmquist, both of Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, for appellee.

Mr. JUSTICE BOYLE delivered the opinion of the court:

In 1974, the petitioner-appellee, Waukegan Port District, hereinafter referred to as the port district, filed a petition for condemnation of a certain parcel of real estate located in Lake County, Illinois, which was owned by the defendants-appellants, William P. Booras, Nell Booras, Nick D. Booras, and Kathy Booras, hereinafter referred to as the defendants. After a bench trial, Judge Thomas R. Doran determined that the defendants were entitled to $103,600 as just compensation for the property taken. The defendants have appealed, contending that the port district did not make a good faith attempt to acquire the property through negotiations and that the trial court did not consider all the relevant factors in determining the size of the condemnation award. Additionally, defendant-appellant, National Bank of North Chicago, and defendant-appellant, Robert H. Miehe, hereinafter Miehe, contended they were improperly denied a jury trial. After reviewing the record and considering the arguments presented, we conclude that the judgment of the circuit court of Lake County should be affirmed.

Some time prior to October 15, 1973, the port district announced plans to expand the Waukegan Memorial Airport. On October 18, 1973, a series of correspondence between Mr. Peter J. Nordigian, attorney for the defendants, and Mr. Lewis D. Clarke, general attorney for the port district, began. This correspondence concerned the port district's eventual acquisition of the defendants' property as part of the airport's expansion program. During the course of this correspondence the defendants demanded $225,000 for their property. However, they made no follow-up on this demand.

On July 15, 1974, the port district sent a "Notice of Intent to Acquire" to the defendants, informing them that the port district had begun the steps necessary for it to acquire the defendants' property and that there would be an inspection of the property by the port district's appraiser. The port district, on August 2, 1974, sent the defendants an offer of $100,000 for the real estate. The defendants made no reply. Finally, on September 4, 1974, the port district filed the petition for condemnation of the defendants' real estate. The petition for condemnation named five other parties in addition to the defendants Booras, who were alleged to have an interest in the real estate. The five others were: Robert H. Miehe, who was the trustee under a trust deed recorded in the recorder's office of Lake County; the National Bank of North Chicago, which held a mortgage secured by the trust deed; unknown owners under the trust deed; Elias Tzimanis, who held a

mechanic's lien on the premises; and Leonard Hoyer, whom the port district believed to be in possession of a portion of the real estate in question at the time of the filing of the petition. Prior to trial the unknown owners were dismissed from the suit.

The National Bank of North Chicago and Miehe filed appearances through their attorney on September 10, 1974. One week later, on September 17, 1974, their attorney filed an answer to the petition for condemnation. On neither occasion did the National Bank of North Chicago or Miehe demand a jury trial.

On October 11, 1974, the defendants filed an amended motion to dismiss and traverse. The motion alleged that the port district had not made a good faith attempt to acquire the premises through negotiations prior to the filing of the petition for condemnation. The port district's answer contained affidavits which alleged that it had attempted to obtain the defendants' permission to conduct an on-site appraisal, but that the defendants refused to give their permission. Thereafter the port district's appraiser made an off-site inspection of the property and formed an opinion that the property had a fair market value of $100,000. In a contract to purchase dated August 2, 1974, the port district offered the defendants $100,000 for their property. The affidavits also alleged that through an error, the offer was submitted to the defendants on a form which incorrectly described the property as "unimproved." After a hearing on the matter, the trial court denied the amended motion to dismiss.

On February 18, 1975, upon a motion by the defendants' attorney, the matter was set for a bench trial. That trial commenced on October 27, 1975. At trial three appraisers testified—two for the port district, who valued the real estate at $95,000 and $100,000, and one for the defendants, who put a fair market value of $140,000 on the property. All three witnesses based their appraisals on the fair market value of the property on the date the petition for condemnation was filed. The defendants' counsel attempted to have the defendants' appraiser testify as to the value of the property upon the completion of certain improvements that were underway at the time the petition for condemnation was filed. This remodelling work had begun prior to the filing of the petition for condemnation. However, the work ceased when the petition was filed. At the time of the filing, the unfinished remodelling consisted of plumbing, heating, electrical and ceiling work which was being done under separate written contracts. Three of these four contracts were dated in the interval between July 15, 1974, when the defendants were notified in writing that the port district intended to obtain their property, and September 4, 1974, when the petition to condemn was filed. The fourth contract was undated.

On February 24, 1976, the trial court entered a judgment setting

$103,600 as just compensation. On March 16, 1976, that sum, together with costs and interests, was deposited with the Lake County treasurer. On that same day, the defendants filed a motion to reconsider the amount of the condemnation award and to vacate and set aside the judgment in that amount and to award instead the amount of $170,000 plus mortgage payments, taxes, and costs, or, in the alternative, to vacate and set aside the judgment and to grant the defendants a new trial on the amount of just compensation. This motion was denied.

The National Bank of North Chicago and Miehe filed a petition on March 18, 1976, asking that the Lake County treasurer pay them the $59,897.55 owed them under the mortgage, out of the condemnation award. On March 22, 1976, the trial court ordered title to the property be vested in the port district and ordered the Lake County treasurer to pay the National Bank of North Chicago and Miehe the sum owed them under the mortgage out of the condemnation award deposited in the treasurer's office.

On April 19, 1976, the National Bank of North Chicago and Miehe filed a motion to vacate the condemnation award on the grounds that they had been denied a jury trial. This was the first time that anyone had demanded a jury trial in this cause. The motion was denied, and two days later, on April 21, 1976, this appeal was filed.

We deal first with the defendants' contention that the trial court improperly denied their amended motion to dismiss. The defendants rely on section 2 of "An Act to provide for * * * eminent domain" (Ill. Rev. Stat. 1975, ch. 47, par. 2) to support their contention that the port district was obligated to make a good faith effort to acquire the property by negotiations prior to its filing of a petition for condemnation. The defendants contend that the port district did not fulfill this obligation and cite the fact that the port district made only one offer prior to the filing of the petition for condemnation.

■■ We are not persuaded by this argument. On August 2, 1974, the port district offered the defendants $100,000 for their property. The defendants made no response to this offer. A similar set of circumstances is found in *County Board of School Trustees v. Batchelder* (1955), 7 Ill. 2d 178, 130 N.E.2d 175, where the Illinois Supreme Court held that one written offer from the condemning authority was sufficient when the property owners made no reply. Furthermore, in light of the defendants' earlier demand of $225,000 for their property and their contention that they ought to be compensated for the incomplete remodelling, it is clear that the defendants and the port district had differing theories on how to value the property, thereby leading to a wide disparity in the value they placed on the real estate. Under such circumstances it is clear that no practical solution could have been reached by further negotiations, and,

therefore, none were needed. *Peoples Gas Light & Coke Co. v. Buckles* (1962), 24 Ill. 2d 520, 182 N.E.2d 169.

■■ The defendants' next contention is that in determining the fair market value of the condemned property, the trial court must consider the value of improvements undertaken in good faith prior to the filing of the petition for condemnation but not yet completed at that time. As evidence of their loss, the defendants offered the contracts they entered into for plumbing, heating, electrical and ceiling work. One of these contracts is undated, and the other three were entered into in the interval between the date the defendants received notice of the port district's intention to acquire their property and the date that the petition for condemnation was filed. Based upon this evidence, the trial court properly found that the improvements for which the defendants seek compensation were not undertaken in good faith. Therefore this contention of the defendants must fail.

■■ The defendants next assert that they are entitled to be compensated for their property at the value it would assume if devoted to its "highest and best use." (*Crystal Lake Park District v. Consumers Co.* (1924), 313 Ill. 395, 145 N.E. 215.) It is not disputed that the highest and best use that the real estate in question could be put to would be for a restaurant and tavern. The defendants were remodelling the premises for such a use when the petition for condemnation was filed. They contend that they should have been permitted to offer evidence of the value of the premises with a remodelled restaurant and tavern situated on it.

We do not agree. The trial court properly valued their real estate as the site for a restaurant and tavern in the condition it was in on September 4, 1974, the date the petition for condemnation was filed.

■■■ The defendants' next contention is that they are entitled to be compensated for the property taxes and mortgage interest payments that were paid by the defendants but which accrued between the date the petition for condemnation was filed and the date the order vesting title in the port district was entered.

We find this argument to be without merit. *City of Chicago v. Provus* (1953), 415 Ill. 618, 114 N.E.2d 793, holds that the fair market value standard for valuing condemned property precludes taking into consideration items which do not directly enhance the value of the real estate on the date of the filing of the petition for condemnation. Since the interest payments on the mortgage did not directly enhance the value of the real estate in question, under *Provus* they may not be recovered. As for the property taxes, once the port district had title vested in it, that title related back to the date the petition for condemnation was filed. (*Board of Junior College District 504 v. Carey* (1969), 43 Ill. 2d 82, 250 N.E.2d 644.) Since the port district is a tax-exempt entity (section 19.19 of the

Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 500.19)), no taxes were due on the property from the date of the petition for condemnation. To allow the defendants to recover from the port district the taxes levied and paid after the filing of the petition for condemnation would be to grant the defendants the power to subvert the General Assembly's intent to exempt real estate in the hands of a tax-exempt entity such as the port district merely by improperly paying real estate taxes. This we will not permit. To the extent that the defendants overpaid their taxes they must seek redress under such other provisions of the law as the General Assembly may have provided.

■■ Finally, the National Bank of North Chicago and Miehe contend they were denied a jury trial. Section 1 of "An Act to provide for * * * eminent domain" (Ill. Rev. Stat. 1975, ch. 47, par. 1) clearly provides that a jury trial will be provided only if it is demanded by a party. The jury demand from the National Bank of North Chicago and Miehe came nearly a month after the final judgment had been rendered. This demand was clearly untimely. This is particularly true in light of the fact that the parties had previously filed an appearance and answer to the petition for condemnation without making a demand for a jury.

For the reasons stated above, the judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

WOODWARD and GUILD, JJ., concur.