THE CITY OF OAKBROOK TERRACE, Plaintiff-Appellant, v. LA SALLE NATIONAL BANK, as Trustee, *et al.*, Defendants-Appellees.

Second District   No. 2—88—1123

Opinion filed July 27, 1989.

Patrick M. Loftus, of Law Offices of Hubert J. Loftus, Ltd., of Addison, for appellant.

Robert E. Wiss and Carl A. Gigante, both of Foran, Wiss & Schultz, of Chicago, for appellees.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, City of Oakbrook Terrace (City), appeals from an order of the circuit court of Du Page County dismissing the City's complaint to condemn the property held in trust by La Salle National Bank for the benefit of defendant, Don Keller. The City raises two issues on appeal: (1) whether the City had authority to condemn the subject property; and (2) whether the City made a good-faith offer to purchase the property.

The parties stipulated to the following facts. The City is a municipal corporation organized pursuant to the laws of the State of Illinois. Keller is the sole beneficiary of La Salle National Bank trust No. 49834. The real property at 17W741 Butterfield Road, Oakbrook Terrace, Illinois (the property), contains approximately 22,500 square feet. The City hired an appraiser who, if called to testify, would state that he appraised the property on July 7, 1987, and in his opinion the fair cash market value was $80,000. In a letter dated September 2, 1987, the city attorney sent Keller an offer to purchase the property. Keller did not respond to the letter. Keller has maintained a sales price of $17 per square foot for the property. After the September 2, 1987, letter, the City did not make any further offers to pur-

chase the property, nor did it make any attempt to agree or engage in negotiations with Keller.

On January 6, 1988, the City filed a petition to condemn the property alleging that it was "authorized to acquire a site for a Community Building by condemnation" and that the acquisition of the property was "convenient, required and needed for a site for a Community Building." The complaint also alleged that the parties were unable to agree on the amount of compensation. The City attached a copy of an ordinance passed by the Oakbrook Terrace city council, which provided that "an Historic and Municipal Building" be established on the property; that it was "necessary and desirable" for the City to acquire title to and possession of the property; that the city attorney was authorized and directed to negotiate with the owner of the property for its purchase; and that if the city attorney was unable to agree with the owners on the amount of compensation, then title to and possession of the property "shall be acquired by the City of Oakbrook Terrace through condemnation." The city clerk certified that the ordinance was passed at an authorized meeting of the city council on October 27, 1987. The condemnation complaint expressed that the City was proceeding pursuant to the authority granted it in section 11—63—5 of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 11—63—5).

Keller filed a traverse and motion to dismiss, alleging: (1) the City was not authorized to acquire the property by eminent domain proceedings; (2) the ordinance did not authorize the City to acquire the property for any purpose authorized by statute; (3) the ordinance was "ineffective in law to vest the power of condemnation in plaintiff or to authorize plaintiff to condemn"; and (4) the City did not make a *bona fide* attempt to agree on the amount of compensation to be paid to Keller for the property.

The trial court granted Keller's traverse and dismissed the complaint with prejudice. In a letter of opinion, the court explained its reasons for granting Keller's motion. First, the court decided that section 11—63—5 must be read in conjunction with the other sections of division 63 of article 11, in particular section 11—63—2, which requires a referendum when a municipality seeks to establish and levy a tax for a community building. The court stated:

> "To argue that Section 11—63—5 should stand apart from the rest of Section 63 so that the corporate authorities may acquire a site for community purposes without a referendum and yet may not establish, maintain or equip such a community building and the further reference to real property found in

[section 11—63—3], leads me to conclude that a referendum is necessary before the plaintiff in this case can proceed to condemn the property."

The court also found that the offer embodied in the September 2 letter "was a hollow one in view of the fact the ordinance authorizing eminent domain had not yet been enacted." In addition, the court decided that because the ordinance provided that the property was to be acquired for "historic and municipal purposes," the property would first have to be designated a historic site before the City could condemn the property. See Ill. Rev. Stat. 1987, ch. 24, par. 11—48.2—1 *et seq.*

The City's first contention on appeal is that the trial court erred when it construed sections 11—63—1, 11—63—2, and 11—63—3 with section 11—63—5 when determining whether the City had authority to condemn the property. Section 11—63—1 provides that municipalities may "establish, equip, maintain and operate a community building or buildings *** and may levy annually a tax *** for these purposes." (Ill. Rev. Stat. 1987, ch. 24, par. 11—63—1.) Under section 11—63—2, a municipality:

"[M]ay not exercise the authorities granted by Section 11—63—1 until the question of establishing, equipping, maintaining and operating a community building or buildings and the levying of an annual tax therefor *** is submitted to the electors of such municipality ***." (Ill. Rev. Stat. 1987, ch. 24, par. 11—63—2.)

Under section 11—63—3, the municipality which voted for the proposition may issue bonds "for the acquisition or construction, or both, of such property, either real or personal, or both, as may be necessary to establish, equip, operate and maintain a community building or buildings." Ill. Rev. Stat. 1987, ch. 24, par. 11—63—3.

The City argues that it is authorized to condemn the property by section 11—63—5, which states:

"The corporate authorities may acquire a site or sites for a community building or buildings by condemnation in the name of the municipality in the manner provided for the exercise of the right of eminent domain under Article VII of the Code of Civil Procedure ***." (Ill. Rev. Stat. 1987, ch. 24, par. 11—63—5.)

The City points out that nowhere in article VII of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 7—101 *et seq.*) does the legislature impose the requirement of a referendum as a precondition to the exercise of the power of eminent domain.

Keller maintains that the City was not authorized to condemn the property because "municipalities are creatures of the statute and have only those powers which are expressly granted or necessarily implied." According to Keller, the City did not comply with section 11—63—2 and, therefore, was not empowered under the statute to condemn the property.

■ When Keller filed the traverse and motion to dismiss, the City was required to make a *prima facie* case of the disputed allegations. (*Department of Public Works & Buildings v. Keller* (1975), 61 Ill. 2d 320, 324, 335 N.E.2d 443, 447; *Lake County Forest Preserve District v. First National Bank* (1987), 154 Ill. App. 3d 45, 51, 506 N.E.2d 424, 428.) When the condemnor establishes a *prima facie* case, the burden shifts to the landowner to show that the governing board of the municipality abused its discretion. *Deerfield Park District v. Progress Development Corp.* (1961), 22 Ill. 2d 132, 139, 174 N.E.2d 850, 854; *Lake County Forest Preserve*, 154 Ill. App. 3d at 51, 506 N.E.2d at 428.

■ A municipality can only exercise the power of eminent domain when it has been specifically conferred by legislative enactment. (*Village of Long Grove v. First National Bank* (1987), 164 Ill. App. 3d 253, 255, 517 N.E.2d 729, 731.) In determining whether a statute grants a municipality the authority to condemn, the court must construe the eminent domain statute strictly, to protect the rights of property owners. *People ex rel. Director of Finance v. YWCA* (1981), 86 Ill. 2d 219, 232-33, 427 N.E.2d 70, 76; *Long Grove*, 164 Ill. App. 3d at 255, 517 N.E.2d at 731.

■ We must examine section 11—63—5 to determine if the City had the authority to condemn the property in this case. While eminent domain statutes are to be construed in favor of the property owner (*YWCA*, 86 Ill. 2d at 233, 427 N.E.2d at 76), it must be noted that rules of construction are used only for resolving ambiguities (*Radloff v. Village of West Dundee* (1986), 140 Ill. App. 3d 338, 340, 489 N.E.2d 356, 357). Where the language is clear and unambiguous, courts must enforce the statute as enacted without considering other aids. *County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 151, 485 N.E.2d 1076, 1079.

■ ■ The focus in a traverse and motion to dismiss is whether the municipality had a right to condemn the property (*Lake County Forest Preserve District*, 154 Ill. App. 3d at 51, 506 N.E.2d at 428) for a statutorily authorized purpose (*Long Grove*, 164 Ill. App. 3d at 255, 517 N.E.2d at 731). Section 11—63—5 specifically authorizes municipalities to acquire by condemnation property for a community

building. (Ill. Rev. Stat. 1987, ch. 24, par. 11—63—5.) Since that section specifically authorizes the eminent domain power, reference to other statutory sections is unnecessary. *Cf. Long Grove*, 164 Ill. App. 3d 253, 517 N.E.2d 729.

■ The language of section 11—63—5 is clear and unambiguous; municipalities may condemn property for a community building in the manner provided by article VII of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 7—101 *et seq*.). (Ill. Rev. Stat. 1987, ch. 24, par. 11—63—5.) To condemn property under article VII, a municipality needs only to file a complaint setting forth its authority in the premises; the purpose for which the property is to be taken; a description of the property; and the names of all persons interested in the property, after the parties have failed to agree on the compensation. (Ill. Rev. Stat. 1987, ch. 110, par. 7—102.) Since neither article VII nor section 11—63—5 requires a referendum as a condition precedent to condemnation, it was error for the court to dismiss the complaint on the basis that the City lacked the statutory power to condemn.

We do not reach the question of whether the City may be required to hold a referendum at some point after filing the condemnation complaint, as that issue is not before us.

Keller argues that even if a referendum is not necessary, the City was still not authorized to take the property because the ordinance authorizing the condemnation was legally insufficient. According to Keller, the City was required to proceed under the statutory section for condemning property for a historic site (see Ill. Rev. Stat. 1987, ch. 24, par. 11—48.2—1 *et seq*.) because the ordinance stated:

"It is hereby determined that an Historic and Municipal building be established, constructed and maintained on the property."

Keller cites three cases which state that a valid enabling ordinance lies at the foundation of condemnation proceedings instituted by municipalities. (See *Goldman v. Moore* (1966), 35 Ill. 2d 450, 220 N.E.2d 466; *City of Rockford v. Rockford Life Insurance Co.* (1959), 16 Ill. 2d 287, 157 N.E.2d 21; *Village of Depue v. Banschbach* (1916), 273 Ill. 574, 113 N.E. 156.) Keller's reliance on these cases is misplaced, as none of them support his proposition that the enabling ordinance must mirror the language of the statute under which the municipality intends to proceed.

■ *Goldman* clarified the requirement under article VII, section 7—102, of a statement of authority in a condemnation complaint in the following manner:

"The 'authority' to which this section refers means the condemnor's statutory authority, and not a resolution adopted by the condemnor. [Citations.] There is thus no explicit statutory requirement that the board make a formal finding with respect to the necessity of acquiring land which it seeks to acquire by eminent domain.

Although the statute does not specifically require formal action by the condemnor, such a requirement necessarily follows from the effect that is given to the condemnor's determination of the necessity for the taking." (*Goldman*, 35 Ill. 2d at 452-53, 220 N.E.2d at 468.)

Under *Goldman*, it is evident that the purpose of the enabling ordinance is to show the necessity for the taking, not the statutory section under which the municipality will proceed.

■ Necessity is inherently bound up with the purpose of the taking. Yet recent cases suggest that a legislative finding of necessity by a city council is not required to defeat a traverse. As long as the ordinance or resolution states that the property will be taken for a public purpose, an eminent domain action may be maintained even though the ultimate use of the condemned property has not yet been determined. (*State of Illinois Medical Center Comm'n v. United Church of the Medical Center* (1986), 142 Ill. App. 3d 498, 503, 491 N.E.2d 1327, 1331.) Our supreme court noted that failure to make a finding of necessity in an ordinance or resolution is not fatal if the condemnor can make a showing of necessity at the hearing on the traverse. *YWCA*, 86 Ill. 2d at 240, 427 N.E.2d at 80.

■ ■ In the present case, the ordinance stated that the property was necessary for the purpose of erecting a "Historic and Municipal Building." The nomenclature ascribed to the building by the city council is irrelevant to the question of whether the ordinance established the need to take the property for a public purpose. The statutory authority for the action was properly alleged in the complaint. The ordinance established that it was necessary for the City to acquire the property for the purpose of establishing a public building. That was sufficient to establish a *prima facie* case for the necessity of the condemnation and the City's authority to exercise the right of eminent domain. (See *City of De Kalb v. Anderson* (1976), 43 Ill. App. 3d 915, 917, 357 N.E.2d 837, 839.) The burden then shifted to Keller to proceed with evidence that the City abused its discretion or lacked the authority to condemn. *City of De Kalb*, 43 Ill. App. 3d at 917, 357 N.E.2d at 839.

■ The City's final appellate contention is that the court erred

in ruling that the City had not made a sufficient attempt to reach an agreement with Keller on the amount of compensation before filing the complaint to condemn. A condition precedent to the exercise of eminent domain power is an attempt to reach an agreement with the property owner on the amount of compensation. (*Department of Transportation v. Marsh* (1977), 54 Ill. App. 3d 890, 891, 368 N.E.2d 172, 173.) The City argues that it made a sufficient attempt to agree with Keller on a price, but Keller insisted on $382,500, while the City limited its offer to the appraised value, $80,000.

The City compares this situation to *County Board of School Trustees v. Batchelder*, in which the supreme court stated:

> "Defendants' contention that there was a failure to prove inability to agree on compensation before the petition was filed must likewise be rejected. By letter addressed to defendants they were offered the sum of $500 for their land, and no reply was made to the letter. Under such circumstances no further attempt to negotiate was necessary." (*County Board of School Trustees v. Batchelder* (1955), 7 Ill. 2d 178, 182, 130 N.E.2d 175, 178.)

In the present case, the City sent an offer of $80,000 to Keller on September 2, 1987. The letter advised Keller that if he did not respond within 14 days of September 2, the City would assume that he rejected the offer. Keller never responded to the letter.

The City also compares this cause to *Waukegan Port District v. Booras* (1977), 55 Ill. App. 3d 790, 371 N.E.2d 321. In *Booras*, the port district offered the defendants $100,000 for their property, and the defendants did not respond. This court found:

> "[I]n light of the defendants' earlier demand of $225,000 for their property and their contention that they ought to be compensated for the incomplete remodeling, it is clear that the defendants and the port district had differing theories on how to value the property, thereby leading to a wide disparity in the value they placed on the real estate. Under such circumstances it is clear that no practical solution could have been reached by further negotiations, and, therefore, none were needed." (*Booras*, 55 Ill. App. 3d at 793-94, 371 N.E.2d at 325.)

The disparity between the offer and the demand in the present case is greater than that in *Booras*. It would appear, then, that after the September 2, 1987, offer, any further negotiations would have been futile. Consequently, no further negotiations were necessary.

Keller argues, however, that the City's attempt to agree

was not a *bona fide* offer because the first formal action taken by the City was the enactment of the ordinance on October 27, 1987. Since the ordinance authorized and directed the city attorney to undertake negotiations with Keller, and none were made after October 27, 1987, then it follows that the City did not make any attempt to reach an agreement on compensation. We disagree.

Keller has cited no authority for the proposition that negotiations must be pursued only after enactment of the enabling ordinance. Such a requirement would involve unnecessary action by the city council if the parties could reach an agreement. By negotiating prior to enacting an ordinance, the parties could determine whether condemnation (and an ordinance authorizing it) is necessary. If the parties agree on compensation, such an ordinance is superfluous.

The record reveals that Keller contacted the mayor in May 1987 and offered to sell the property for $17 per square foot, or $382,500. The appraiser hired by the City appraised the property at $80,000 on July 7, 1987. At the July 28, 1987, city council meeting, the city council authorized the city attorney to make an offer of $80,000 to Keller. The city attorney sent the offer to Keller, and Keller never responded. Based on these facts, we conclude that the City made a sufficient effort to reach an agreement on compensation prior to filing the condemnation complaint.

Thus, the trial court erred in dismissing the condemnation complaint and granting the traverse.

The order of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

DUNN and INGLIS, JJ., concur.