THE VILLAGE OF CARY, Plaintiff-Appellee, v. TROUT VALLEY ASSOCIATION, Defendant-Appellant.

Second District    No. 2—95—1470

Opinion filed June 28, 1996.—Rehearing denied August 9, 1996.

Margaret M. Borcia and Donald T. Morrison, both of Morrison & Morrison, P.C., of Waukegan, for appellant.

Leo N. Cinquino and Celeste P. Cinquino, both of Righeimer, Martin & Cinquino, P.C., of Chicago, for appellee.

JUSTICE GEIGER delivered the opinion of the court:
The defendant, Trout Valley Association (the Association), appeals from the orders of the circuit court of McHenry County denying its motion to traverse and dismiss, granting judgment on the condemnation complaint filed by the plaintiff, the Village of Cary (the Village), denying its post-trial motion, and vesting title. On appeal, the Association argues: (1) that the trial court erred in denying its traverse and motion to dismiss because the Village did not meet the statutory requirements to acquire sewer easements outside its municipal boundaries; (2) that the trial court erred in denying its traverse and motion to dismiss because the taking of the subject property is not necessary for the completion of the proposed improvement; (3) that the trial court erred in denying its traverse and motion to dismiss because the taking of the subject property is not for a valid public purpose; (4) that the trial court erred in allowing the Village's valuation witness to testify to undisclosed opinions of value; (5)

that the trial court erred in allowing the Village to introduce evidence that the proposed sewer line benefits the remainder of the subject property; (6) that the trial court erred in allowing the restrictions and conditions of the Trout Valley subdivision to be introduced into evidence; and (7) that the trial court erred in not allowing evidence that the owner of Gentry Ridge subdivision paid the Village's engineering witness and is paying for the acquisition of the easements. We vacate the circuit court's judgment on the jury's verdict and remand for entry of an order dismissing the Village's petition for condemnation.

The subject property, known as lot 244, is owned by the Association. It is located in the Trout Valley subdivision in unincorporated McHenry County adjacent to the Village's boundaries. The subdivision contains over 200 homesites, most of which are developed with single-family residences and served by well and septic. Some lots in the Trout Valley subdivision are currently served with an existing sewer line from the Village. The subject property contains approximately 14 acres, is mostly vacant land, has continuously been used as a recreation area for Trout Valley residents since the subdivision was recorded in 1955, and contains grass, trees, a horse corral, a baseball backstop, and vegetable gardens. The subject property is surrounded on all sides by private roads within the Trout Valley subdivision.

On April 29, 1994, the Village filed a complaint for condemnation in which it sought to acquire a 20-foot-wide permanent easement and a 20-foot-wide temporary construction easement from the Association, for construction and installation of a sewer pipe to be constructed underground. The complaint alleged that the Village had the authority to acquire the subject property pursuant to section 11—139—12 of division 139 of the Illinois Municipal Code (the Code) (65 ILCS 5/11—139—12 (West 1994)).

On May 19, 1994, the Association filed a motion to traverse and dismiss, contending that the complaint for condemnation should be dismissed because (1) the acquisition of the subject property was not for a valid public purpose; (2) the Village did not have the authority to acquire the subject property; (3) the property to be served by the sewer was not within the Village; (4) the acquisition of the subject property was not necessary for the completion of the proposed improvement; (5) the ordinance was unconstitutional as it did not separate public and private uses; (6) there was not a *bona fide* attempt to agree prior to filing the complaint for condemnation; and (7) the subject property was outside the Village's boundaries.

On February 3, 1995, the trial court held a hearing on the As-

sociation's motion to traverse and dismiss. The Village offered into evidence, with no objection, certain public documents, including: (1) a certified Secretary of State record indicating that the Village was a municipality in good standing; (2) the Village's ordinance dated March 12, 1957, establishing a combined waterworks and sanitary sewage system; (3) the Village's ordinance dated March 16, 1994, authorizing the acquisition of a perpetual easement and a temporary construction easement for a municipal sanitary sewer on the subject property; and (4) the Village's letter of offer written by the Village's attorney, J. William Braithwaite, dated April 6, 1994, which contained an offer to purchase the permanent and temporary easements for $29,500, which offer terminated if not accepted by the Association by April 18, 1994. The parties stipulated that the letter was sent and received. After the introduction of these documents into evidence, the Village rested. The Village argued to the trial court that it had established a *prima facie* case.

Over the Village's objections, the Association was allowed to identify its exhibits 1 through 13, 15, 19 through 24, 28, and 29, which the court admitted into evidence.

The Association then called its only witness, the Village's engineer, Lawrence E. Thomas. Thomas testified that in 1989 he was asked by the Village to consider two alternative routes for the interceptor sewer line. Initial costs were about the same for each route. The sewer was necessary to provide sewage disposal for Gentry Ridge subdivision, other subdivisions that currently exist, and for undeveloped land. The residential lots in Gentry Ridge would start at 10,890 square feet and some would be larger. Thomas testified that the route chosen by the Village was an appropriate route as the operational costs were less. Also, the route selected would serve the needs of the community in the future. This route could serve the unincorporated lots on the Fox River, as well as the Trout Valley subdivision, if septic systems failed. The Village's water and sewage system is operated as one system. A water pipe must be separated from a sanitary sewer and cannot be in the same trench.

The trial court denied the Association's motion to traverse and dismiss, finding that the legislative branch did not abuse its discretion. The Association's post-trial motion, which contested the court's denial of the motion to traverse and dismiss, was also denied. Therefore, the matter was set for trial on the issue of just compensation.

On April 18, 1995, the jury awarded $45,000 for the taking of the permanent easement and $5,000 for the taking of the temporary construction easement. The jury found there was no damage to the remainder.

On August 24, 1995, the final judgment order was filed. On September 19, 1995, the Association filed a post-trial motion, requesting that this cause be dismissed or, in the alternative, for a new trial. On October 25, 1995, the trial court denied the Association's post-trial motion. On November 22, 1995, the Association filed its notice of appeal.

The Association's first argument on appeal is that the trial court erred in denying its traverse and motion to dismiss because the Village did not meet the statutory requirements to acquire sewer easements outside its municipal boundaries.

■ A traverse and motion to dismiss challenge the plaintiff's right to condemn the defendant's property and will result in dismissal when the plaintiff cannot show its right to condemn by proper proof. *Forest Preserve District v. Estes*, 222 Ill. App. 3d 167, 175 (1991). Where a defendant in a condemnation suit contests the Village's right to condemn by filing a traverse and motion to dismiss, the burden is upon the plaintiff to make a *prima facie* case of the disputed allegations. *Department of Transportation v. First Galesburg National Bank & Trust Co.*, 141 Ill. 2d 462, 469 (1990).

■ A municipality can only exercise the power of eminent domain when it has been specifically conferred by legislative enactment. *City of Oakbrook Terrace v. La Salle National Bank*, 186 Ill. App. 3d 343, 348 (1989). An ordinance granting eminent domain power must be strictly construed (*Department of Transportation*, 141 Ill. 2d at 468-69) in order to protect the rights of property owners (*Forest Preserve District*, 222 Ill. App. 3d at 175). A statutory grant of eminent domain power can only be exercised in the manner authorized by statute. *Village of Skokie v. Gianoulis*, 260 Ill. App. 3d 287, 295 (1994).

In interpreting a statute, the primary rule of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature. *In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989*, 167 Ill. 2d 161, 168 (1995). In order to determine the legislative intent, courts must read the statute as a whole, and all relevant parts must be considered. *People v. Lewis*, 158 Ill. 2d 386, 389 (1994). Each section should be construed in connection with every other section. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397 (1994). Courts should look to the language of the statute as the best indication of legislative intent, giving the terms of the statute their ordinary meaning. *In re Application for Judgment*, 167 Ill. 2d at 168. Where the statutory language is clear, courts should give effect to the statute as enacted without considering extrinsic aids for construction. *Bogseth v. Emanuel*, 166 Ill. 2d 507, 513 (1995).

In the present case, the complaint for condemnation alleges that the Village is condemning the subject property pursuant to division 139 of the Code (65 ILCS 5/11—139—1 *et seq.* (West 1994)). Therefore, we must examine division 139 in order to determine whether the Village had the authority to condemn the subject property in the present case.

■ Section 11—139—2 of the Code provides, in pertinent part:

"Any municipality may acquire, or construct, and maintain and operate a combined waterworks and sewerage system either within or without the corporate limits thereof. \*\*\* A municipality owning, acquiring, or constructing and providing for the operation of a combined waterworks and sewerage system may improve and extend that system \*\*\*." 65 ILCS 5/11—139—2 (West 1994).

Section 11—139—5 of the Code provides, in pertinent part:

"The corporate authorities of any municipality availing itself of the provisions of this Division 139 shall adopt an ordinance describing in a general way the contemplated project. \*\*\* If it is intended to acquire or construct a combined waterworks and sewerage system, or to extend and improve such a system, the ordinance shall describe in a general way the system to be acquired or constructed or the extension or improvement to be made or any project authorized by Section 11—139—2. \*\*\* The ordinance shall set out the estimated cost of the contemplated project \*\*\*. The ordinance shall determine the period of usefulness of the contemplated project. The ordinance shall also prescribe the method of defraying the cost of the contemplated project and fix the amount of revenue bonds proposed to be issued, the interest rate, and all other details in connection with the bonds deemed advisable. The ordinance may contain such covenants and restrictions upon the issuance thereafter of additional revenue bonds as may be deemed necessary or advisable for the assurance of the payment of bonds thereby authorized and as may be thereafter issued." 65 ILCS 5/11—139—5 (West 1994).

Section 11—139—6 of the Code provides, in pertinent part:

"Within 10 days after the ordinance for any project under this Division 139 has been passed, it shall be published at least once in one or more newspapers published in the municipality, or, if no newspaper is published therein, then in one or more newspapers with a general circulation within the municipality. \*\*\* The publication \*\*\* of the ordinance shall be accompanied by a notice of (1) the specific number of voters required to sign a petition requesting the question of the adoption of the ordinance be submitted to the electors of the municipality; (2) the time in which such petition must be filed; and (3) the date of the prospective referendum." 65 ILCS 5/11—139—6 (West 1994).

Section 11—139—12 of the Code provides, in pertinent part:

"For the purpose of acquiring, constructing, extending, or improving any combined waterworks and sewerage system under this Division 139, or any property necessary or appropriate therefor, any municipality has the right of eminent domain, as provided by Article VII of the Code of Civil Procedure [(735 ILCS 5/7—101 *et seq.* (West 1994))], as heretofore and hereafter amended." 65 ILCS 5/11—139—12 (West 1994).

In the present case, once the Association contested the Village's right to condemn by filing a traverse and motion to dismiss, the Village had the burden of establishing that it had the authority under division 139 to exercise its right of eminent domain to acquire the easements on the subject property. The Village attempted to meet this burden by introducing into evidence records from the Secretary of State that it is a municipality in good standing, an ordinance establishing a combined waterworks and sewerage system, and an ordinance authorizing the acquisition of the easements on the subject property. The ordinance authorizing the acquisition of the easements on the subject property provides in pertinent part:

"WHEREAS, the Corporate Authorities of the Village *** find that the parcel of land described hereinafter in Section 1 of this ordinance is required and needed for a perpetual easement for the purpose of constructing, installing, maintaining, repairing, removing, inspecting and replacing and operating a municipal sanitary sewer main not to exceed 36 inches in diameter with appurtenances thereto, and it is useful, advantageous, necessary or desirable for the municipal purposes and the public welfare of the citizens of the Village *** to acquire a perpetual easement in said parcel of land for said municipal sanitary sewer main purposes.

WHEREAS, the Corporate Authorities of the Village *** find that the parcel of land described herein in Section 2 of this ordinance is required and needed for a temporary construction easement for the accommodation of construction labor, machinery and equipment, material, supplies and excavated earth during the initial construction of said municipal sanitary sewer main and appurtenances and during the repair, removal and replacement thereof, and it is useful, advantageous, necessary or desirable for the municipal purposes and the public welfare of the citizens of the Village *** to acquire said temporary construction easement in said parcel of land for said municipal sanitary sewer main purposes.

WHEREAS, the parcels of land described hereinafter in Sections 1 and 2 of this ordinance are located outside of the territory of the Village ***.

NOW THEREFORE, BE IT ORDAINED BY THE PRESIDENT AND BOARD OF TRUSTEES OF THE VILLAGE \*\*\* AS FOLLOWS:

*SECTION 1.* That it is hereby determined and found that it is useful, advantageous, necessary and desirable for the municipal purposes and public welfare of the citizens of the Village \*\*\* to acquire a Perpetual easement for the aforesaid municipal sanitary sewer main purposes in the following legally described premises:

\* \* \*

*SECTION 2.* That it is hereby determined and found that it is useful, advantageous, necessary and desirable for the municipal purposes and public welfare of the citizens of the Village \*\*\* to acquire the aforesaid temporary construction easement in the following legally described premises:

\* \* \*

*SECTION 3.* A Perpetual easement for the aforesaid municipal sanitary sewer main purposes in and to the premises legally described in Section 1 of this ordinance and a temporary construction easement, as aforesaid, in and to the premises legally described in Section 2 of this ordinance shall be acquired by the Village \*\*\* through condemnation, and the law firm of Arnstein & Lehr \*\*\* is hereby authorized, empowered and directed to institute proceedings in any court of competent jurisdiction to acquire said easements for the Village in accordance with the eminent domain laws of the State of Illinois.

*SECTION 4.* This ordinance shall be published in pamphlet form by and under the authority of the Corporate Authorities of the Village \*\*\*.

*SECTION 5.* This ordinance shall be in full force and effect from and after its passage, approval according to law."

■ In passing the ordinance authorizing acquisition of the easements on the subject property, the Village failed to comply with the requirements of division 139. The ordinance does not comply with section 11—139—5. For example, the ordinance does not set out the estimated cost of the contemplated project; it does not determine the period of usefulness of the contemplated project; and it does not prescribe the method of defraying the cost of the contemplated project. Furthermore, the Village did not present any evidence that the ordinance was published, at least once, in one or more newspapers published in the municipality within 10 days after the passage of the ordinance, as required by section 11—139—6. Likewise, the Village did not produce any evidence that any publication was accompanied by the required notice.

In its brief on appeal, the Village does not argue that it complied with sections 11—139—5 and 11—139—6. Instead, it argues that it was not required to comply with those sections. In support of this argument, the Village cites *City of Oakbrook Terrace*, 186 Ill. App. 3d 343.

In *City of Oakbrook Terrace*, 186 Ill. App. 3d at 346, the plaintiff sought to acquire the subject property as a site for a community building pursuant to section 11—63—5 of the Code (Ill. Rev. Stat. 1987, ch. 24, par. 11—63—5). The defendant filed a traverse and motion to dismiss. *City of Oakbrook Terrace*, 186 Ill. App. 3d at 346. The trial court granted the defendant's traverse and motion to dismiss. *City of Oakbrook Terrace*, 186 Ill. App. 3d at 346. The trial court decided that section 11—63—5 must be read in conjunction with the other sections of division 63 of article 11 of the Code, in particular section 11—63—2 (Ill. Rev. Stat. 1987, ch. 24, par. 11—63—2), which requires a referendum when a municipality seeks to establish and levy a tax for a community building. *City of Oakbrook Terrace*, 186 Ill. App. 3d at 346. This court reversed the trial court because the plain language of section 11—63—5 and article VII of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 7—101 *et seq.*) does not require a referendum prior to a municipality exercising its authority to acquire a site for a community building. *City of Oakbrook Terrace*, 186 Ill. App. 3d at 349.

The difference in the statutory language of division 63 and division 139 distinguishes *City of Oakbrook Terrace* from the case at bar. Pursuant to section 11—63—2, a municipality "may not exercise the authorities granted by Section 11—63—1 until the question *** is submitted to the electors of such municipality." Ill. Rev. Stat. 1987, ch. 24, par. 11—63—2. Section 11—63—1 deals with the authority to construct and maintain a community building, not the authority to acquire the site for the community building. Ill. Rev. Stat. 1987, ch. 24, par. 11—63—1.

Section 11—139—5 states that "[t]he corporate authorities of any municipality availing itself of the provisions of this Division 139 shall adopt an ordinance" which "shall set out the estimated cost of the contemplated project" and "shall determine the period of usefulness of the contemplated project" and "shall also prescribe the method of defraying the cost of the contemplated project." 65 ILCS 5/11—139—5 (West 1994). Likewise, section 11—139—6 states that "[w]ithin 10 days after the ordinance for any project under this Division 139 has been passed, it shall be published at least once in one or more newspapers published in the municipality." 65 ILCS 5/11—139—6 (West 1994).

The statutory language of division 139 is clear and unambiguous. The corporate authorities of any municipality availing itself of the provisions of division 139, including section 11—139—12, which authorizes a municipality to exercise the right of eminent domain, must first pass an ordinance which meets the requirements of section 11—139—5 and is published pursuant to section 11—139—6. Since the Village attempts to avail itself of the provisions of division 139 for the right of eminent domain, it must comply with the requirements of sections 11—139—5 and 11—139—6 in order to do so. Since the Village failed to comply with the mandatory requirements of division 139, the Village failed to meet its burden of presenting a *prima facie* case (see *Department of Transportation*, 141 Ill. 2d at 469). Therefore, the Association's traverse and motion to dismiss should have been granted. See *Forest Preserve District*, 222 Ill. App. 3d at 175. As our resolution of this issue is dispositive, we need not address the Association's remaining arguments on appeal.

For the foregoing reasons, the circuit court's judgment on the jury's verdict is vacated, and the cause is remanded for the entry of an order dismissing the Village's petition for condemnation.

Vacated and remanded.

McLAREN, P.J., and THOMAS, J., concur.