FIFTH DIVISION

SEPTEMBER 30, 2003

No. 1-02-0914

THE BOARD OF TRUSTEES OF THE ) APPEAL FROM THE

UNIVERSITY OF ILLINOIS, ) CIRCUIT COURT OF

) COOK COUNTY. 

Plaintiff-Appellee, )

)

v. )

) 

WILLIAM SHAPIRO, ) HONORABLE 

) JOANNE L. LANIGAN,

Defendant-Appellant. ) JUDGE PRESIDING.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendant, William Shapiro (Shapiro), appeals from an order of the circuit court of Cook County directing a verdict in favor of plaintiff, the Board of Trustees of the University of Illinois (the Board), after a trial in an eminent domain action.  On appeal, Shapiro contends that:  (1) the judgment of the trial court is void as in excess of its statutory authority regarding eminent domain proceedings; (2) the trial court abused its discretion in excluding evidence of comparable sales properties on the grounds that the acquisition of such properties was "under threat of condemnation"; (3) the trial court abused its discretion in excluding evidence of comparable sales properties with improvements to the land on the grounds that the properties were dissimilar to the subject property; (4) the trial court erred in barring Shapiro's expert appraiser's testimony on the grounds that a property used as an example of a comparable sale is zoned differently from the subject property; and (5) the trial court erred in granting the Board's motion to strike Shapiro's expert's testimony after both parties had rested on their evidence.  For the following reasons, we affirm the judgment of the trial court.

BACKGROUND

The record reveals the following relevant facts.  Shapiro is the owner of record of a parcel of property located at 728 W. Liberty Street, Chicago, with a property index number (PIN) of 17-21-111-017 (Liberty property). The Liberty property consists of 1,825 square feet, is vacant and unimproved, and is zoned for industrial use only.  

Section 7 of the University of Illinois Act (University Act) (110 ILCS 305/1 
et seq.
 (West 2000)) grants the Board has the following power of eminent domain: 

"The Trustees shall have power (a) to purchase real property and easements, and (b) to acquire real property and easements in the manner provided by law for the exercise of the right of eminent domain, and in the event negotiations for the acquisition of real property or easements for making any improvement which the Trustees are authorized to make shall have proven unsuccessful and the Trustees shall have by resolution adopted a schedule or plan or operation for the execution of the project and therein made a finding that it is necessary to take such property or easements immediately or at some specified later date in order to comply with the schedule, the Trustees may acquire such property or easements in the same manner provided in Sections 7-103 through 7-112 of the Code of Civil Procedure."  110 ILCS 305/7(a) (West 2000).

In accordance with the University Act, the Board passed a resolution on March 12, 1998, to acquire the Liberty  property.  On June 23, 2000, the Board exercised its authority under the University Act to obtain Shapiro's property for use in its South Campus Development Project by filing a complaint for condemnation. 

On September 20, 2000, the trial court entered a case management order setting forth deadlines for the parties' filings.  The trial court set forth the date of November 29, 2000, as a deadline for Shapiro to file "Responses, if any, to the Complaint for Condemnation, including Motions to Dismiss, Traverses, and Cross Claims."
(footnote: 1)  The record shows that Shapiro did not file any motion to dismiss the Board's action.  On March 30, 2001, Shapiro answered the Board's interrogatories stating that he would rely on two real estate appraisal experts, Michael Grimes and Larry Starkman.

On June 22, 2001, the Board filed a motion 
in limine
 to bar the testimony of Starkman, on the grounds that he had not been made available for deposition.  The trial court granted this motion by an order entered on June 27, 2001.  The trial court further ordered that "Defendant William Shapiro is barred from supplementing the appraisal of Michael Grimes," and ordered that discovery be closed on July 16, 2001.   

Prior to trial, Grimes submitted an appraisal report on the Liberty property.  Grimes' appraisal report provided the sale price of four properties he considered "comparable" to the Liberty property.  The report revealed that three out of the four property sales were made under threat of condemnation and two of those three properties were zoned for commercial use.  Properties Nos. 1, 2 and 3 were all within the area that the Board had, by resolution dated September 10, 1992, specifically designated for acquisition as part of its South Campus Development Project.  Grimes' appraisal report identified properties 1 and 2 as having been acquired by the Board in May and June 2000.

Grimes' appraisal report contained comparable sales of the following properties described as follows:

Property No. 1:  A vacant property located at 701 W. Maxwell Street, sold to the Board in June 2000, under threat of condemnation;

Property No. 2:  An improved property located at 1232-34 S. Halsted Street sold to the Board in May 2000, (a) under threat of condemnation; and (b) commercially improved with a brick building;

Property No. 3:  An improved property located at 1308 S. Halsted Street sold to the Board in October 1997, (a) under threat of condemnation; (b) commercially zoned and improved with a brick building used for retail purposes at the time of the sale; and (c) in which the owner invested $64,000 in improvements and which the owner continued to use as a retail store until the time the Board acquired the property in 2000.       

During his deposition, Grimes acknowledged that it was improper to rely on sales made under threat of condemnation and conceded that such sales are "normally not considered" when appraising a condemned property.  Grimes also testified that he attached no value to the improvements on the four comparable properties in his report, but that these four properties were superior to the Liberty property in location and accessibility.  

On August 22, 2001, the Board filed a motion 
in limine
 to prohibit Grimes from using valuation data of the above three described "comparable" property sales as improper since they were sales made "under threat of condemnation."  The Board submitted the affidavit of Ellen M. Hamilton, a University employee, who testified that these three properties were acquired by the University pursuant to a resolution of the Board dated September 10, 1992.  Ms. Hamilton testified that the properties at 701 Maxwell Street and 1304 Halsted Street were acquired by the University in June 2000 and May 2000, respectively, and that the property located at 1308 Halsted Street was acquired by the University in August 2000.   The Board also asserted that the three properties were not comparable to the Liberty property because they were zoned differently.   On November 8, 2001, the trial court excluded evidence of these three "comparable" sales. 

 At the jury instruction conference prior to trial, Shapiro tendered Illinois Pattern Jury Instruction Civil, No. 300.85 (3d ed. 1995), pertaining to the reasonable probability of rezoning the Liberty property.  The Board objected to the instruction because there had been no preliminary showing that it was reasonably probable that the property could or would be rezoned, as required under Illinois law.  The trial court rejected Shapiro's proposed instruction.  Thereafter, the Board questioned whether Grimes would be permitted to render his opinion at trial that the property would be rezoned.  The record reveals the following colloquy:

"MS. KENEDY:  Your Honor, a point of clarification with respect to witness testimony , I'm uncertain, I don't know, but I'm hopeful that we're not going to be hearing any testimony from Mr. Grimes or Shapiro concerning rezoning of this property given your ruling.

THE COURT:  I'm not expecting them to bring that in.

MR. SHAPIRO:  Me either."

At trial, the Board offered the testimony of its expert, James A. Gibbons, a real estate appraiser.  Gibbons testified that he examined five "comparable" sales which fetched prices of between $1.93 and $7.27 per square foot.  The properties cited by Gibbons were described as follows:

(1) Located at 26th Street and Dearborn Street, 14 blocks from the Liberty property, Property No. 1 measured approximately 34,600 square feet, was vacant land zoned for manufacturing purposes, and sold in March 2000 for $7.27 per square foot;

(2) Property No. 2, located at 2404 South Wabash Avenue was 12 blocks south and 15 blocks east of the Liberty property, was also zoned for manufacturing, measured 22,683 square feet, and sold in 1999 for $5.29 per square foot;

(3) Property No. 3, located at Wallace Street and Pershing Road, 27 blocks south of the Liberty property, was an empty lot measuring 107,740 square feet and sold in 1999 for $3.95 per square foot;

(4) Located at 2101 South Morgan Street, property No. 4 was 9 blocks south of the Liberty property and measured 65,775 square feet; this property was zoned for industrial use and sold in 1998 for $4.26 per square foot; and

(5) Property No. 5, located at Throop Street and 21st Street, many blocks south of the Liberty property, measured 38,725 square feet, was zoned for manufacturing use, and sold in 1998 for $3.23 per square foot.

Based on these "comparables," Gibbons opined that the Liberty property had a fair market value of $7.50 per square foot for a total value of $13,700.

Grimes then attempted to testify on behalf of Shapiro that, in his opinion, the Liberty property could be rezoned for commercial or residential use, based on the nature of real estate development taking place in the neighborhood of the Liberty property.  However, because of the  trial court's ruling that evidence of rezoning would be precluded, the trial court did not allow Grimes to testify on the possibility of rezoning the Liberty property.  Shapiro did not object to the trial court's ruling.

Grimes testified that the highest and best use for a property is defined as a use that can "legally, feasibly, and monetarily support the highest value of the property."  Grimes described a comparable sale of a property located at 1315 Taylor Street which was a vacant lot of roughly the same size as the Liberty property, at 2,550 square feet.  Grimes stated that this property sold in April 1999 for $41.38 per square foot.  Based on this comparable property, Grimes stated that the Liberty property would be properly valued at $42.62 per square foot for a total of $77,781.

Grimes opined that the highest and best use for the Liberty property was commercial and residential development.  Grimes considered the five properties offered by Gibbons as comparable sales and concluded that those properties were not comparable because of their much larger size and distant location from the Liberty property.

At the conclusion of Grimes' direct testimony, Shapiro moved for an order accepting himself as an expert.  The trial court stated it would "hold off" on that decision until after the Board completed cross-examination.

 On cross-examination, Grimes admitted that commercial and residential development would not be legally permissible under the property's existing zoning. Grimes conceded that the only comparable sale offered, 1315 Taylor Street, was an improved, commercially zoned parcel in the "Little Italy" neighborhood, and was far superior to the vacant Liberty property both in terms of accessibility and location.  Grimes admitted that zoning on this comparable property permitted a business use on the first floor and residential use on the upper floors, but that the industrial-use zoning for the Liberty property would not permit such uses.  Grimes made no adjustment in his valuation of the Liberty property based on the differences in zoning between the one accepted comparable property and the Liberty property.    

After cross-examination, Shapiro rested his case despite the fact that the trial court had not ruled on his motion to accept himself as an expert.  The Board moved for an order striking Grimes' testimony.  The trial court heard arguments on the Board's motion, reviewed relevant case law, and granted the motion, striking Grimes' testimony.  The trial court entered an order fining that Grimes' testimony was unreliable because:  (1) Grimes improperly relied on a highest and best use that was illegal under the zoning for the subject property and no evidence was before the jury on the reasonable probability of rezoning; and (2) Grimes made no adjustment in his valuation of the Liberty property based on the differences in zoning between the one accepted comparable property and the Liberty property.  Shapiro did not seek permission to reopen his case to allow the owner (Shapiro) to testify as to the fair market value of the property.

At the conclusion of the trial, the Board moved for a directed verdict.  The trial court concluded that there was no range of value from which the jury could render a contrary verdict, and granted the Board's motion for a directed verdict setting just compensation in the amount of $13,700.

Shapiro timely appeals from entry of the directed verdict in favor of the Board, as well as the orders of the trial court excluding the testimony and evidence of his expert at trial.

OPINION

Initially, Shapiro contends that the Board failed to exercise its eminent domain powers in accordance with statutory authority thereby rendering its condemnation proceeding void.    Shapiro argues that the legal basis for the eminent domain proceeding against the Liberty  property is a resolution of the Board dated September 10, 1992 (1992 Resolution), and enacted pursuant to section 7 of the University Act.  Therein, the Board identified 75 properties that it deemed "necessary to take" for the purpose of developing the area to the south of the University's campus in Chicago.  Shapiro notes that the Liberty property, specifically "728 West Liberty," was not designated as one of 75 properties to be acquired by the Board.  In fact, the 1992 Resolution specified the 75 properties by their PIN, including a series of properties on "Block 111," and designating properties with the PINs immediately before and after the Liberty property, 
i.e.
, PINs 17-21-111-016 and 17-21-111-018.  The PIN of the Liberty property, as noted above, is 17-21-111-017.  Thus, Shapiro argues, the Board failed to comply with the procedure set forth in section 7 of the University Act. 

A municipality can only exercise the power of eminent domain when it has been specifically conferred by legislative enactment.  
Village of Long Grove v. First National Bank of Lake Forest
, 164 Ill. App. 3d 253, 255, 517 N.E.2d 729, 731 (1987).   In determining whether a statute grants a municipality the authority to condemn, the court must construe the eminent domain statute strictly, to protect the rights of property owners.  
People ex rel. Director of Finance v. Young Women's Christian Association
, 86 Ill. 2d 219, 232-33, 427 N.E.2d 70, 76 (1981); 
City of Oakbrook Terrace v. La Salle National Bank
, 186 Ill. App. 3d 343,542 N.E.2d 478 (1989).

Here, the record shows that Shapiro's contention is waived for review for his failure to file a traverse or motion to dismiss the Board's complaint for condemnation.  Shapiro failed to respond by motion and assert that the Board lacked the authority to proceed in it's complaint pursuant to the University Act and the resolution adopted in 2000.   

Next, Shapiro contends that the trial court erred in excluding evidence of three properties proposed as comparable by Grimes.  Shapiro argues that the trial court erred in rejecting the evidence on the grounds that the sales of the properties were made under threat of condemnation.

It is well established that property sales made under threat of condemnation are not reliable evidence of fair market value, defined as the amount of money that a willing buyer, under ordinary circumstances, would pay to a willing owner in a voluntary sale, neither being under any obligation to buy or sell.  
Department of Public Works & Buildings v. Oberlaender
, 42 Ill. 2d 410, 415, 247 N.E.2d 888, 892 (1969).  Property sales made under threat of condemnation are inadmissible because the party asserting the sale evidence cannot establish that the property was "sold freely and in the open market."  
Forest Preserve District v. Krol
, 12 Ill. 2d 139, 148, 145 N.E.2d 599 (1957); 
Oak Brook Park District v. Oak Brook Development Co
., 170 
 
Ill. App. 3d 221, 235, 524 N.E.2d 213, 222 (1988).     

The record shows that the Board passed its resolution to acquire properties for the South Campus Development Project area in 1992.  Each of the three sales proffered by Grimes is a property that was subject to the Board's authority to condemn at the time of the sale.  As such, the trial court properly excluded evidence of these sales as comparable.

Shapiro further argues that the trial court incorrectly concluded that two of the three excluded properties were too dissimilar to the Liberty property to be considered comparable.  

 In condemnation cases, the admission and exclusion of evidence as to comparable sales rest entirely in the discretion of the trial court. 
Department of Transportation v. Chicago Title & Trust Co
, 303 Ill. App. 3d 484, 500, 707 N.E.2d 637 (1999).  An expert in valuation of property for condemnation purposes may only rely on facts or data that are legally relevant to the fair cash market value of the property in question. 
 The trial court's determination shall not be disturbed absent an abuse of discretion.  
City of Chicago v. Anthony
, 136 Ill. 2d 169, 187, 554 N.E.2d 1381, 1389 (1990).  Evidence of the sale of improved property is inadmissible as a comparable sale of a vacant property unless the properties are otherwise closely comparable in size, use, zoning and locale.  
Sanitary District of Chicago v. Boening
, 267 Ill. 118, 122, 107 N.E.810, 812 (1915).

Here, the record shows that Grimes attempted to submit as comparable sales properties improved with buildings and either residences or businesses when the Liberty property was maintained as an unimproved empty lot.  The trial court properly denied the use of properties that were not, in fact, comparable.

Next, Shapiro contends that the trial court erred in striking Grimes' testimony as to future possible rezoning of the Liberty property.  Grimes testified that the "highest and best use" of the Liberty property was for commercial and business purposes, while at the same time conceding that the Liberty property was zoned solely for industrial purposes.  

 The reasonable probability of rezoning is a proper factor to be considered in determining the value of property taken in a condemnation proceeding (
Department of Public Works & Buildings v. Rogers
, 39 Ill. 2d 109, 113, 233 N.E.2d 409 (1968)), and where there is sufficient evidence for a court to make a finding that the reasonable probability exists, then the witnesses may testify as to the value of the land based upon such probability.  
Department of Public Works & Buildings v. Ass'n of Franciscan Fathers
, 69 Ill. 2d 308, 314-15, 371 N.E.2d 616 
(1977); 
Department of Transportation v. First Bank of Schaumburg
, 260 Ill. App. 3d 490, 499, 631 N.E.2d 1145 (1992).  

Here, Shapiro provided no preliminary showing as to the reasonable probability of rezoning.  In light of this fact, the trial court was required to exclude Grimes' opinion as to the probability of rezoning the Liberty property.  

Finally, Shapiro contends that the trial court erred in granting the Board's motion for a directed verdict and deciding the question of valuation.  Shapiro argues that the trial court usurped the role of the jury.

In an eminent domain case, a jury's verdict on the fair market value of the property to be taken must be within the range of value presented at trial.  
Forest Preserve District v. Kelley
, 69 
 
Ill. App. 3d 309, 319, 387 N.E.2d 368, 376 (1979).  If a jury has no range of value from which to render a verdict, the court must enter a directed verdict for the value presented.  
Department of Public Works & Buildings. v. Butler
, 5 
 
Ill. App. 3d 134, 137, 283 N.E.2d 109, 110-11 (1972).

In the present case, Shapiro failed to present any evidence of the range of value of the Liberty property.  Although Shapiro initially moved to submit himself as an expert witness, he failed to follow through on a motion to reopen his case and present other evidence of valuation after Grimes' testimony was excluded.  Under this circumstance, with only the valuation evidence presented by the Board for the jury to consider, the trial court properly directed a verdict in favor of the Board.

We therefore affirm the judgment of the trial court.

Affirmed.

QUINN and HARTIGAN, JJ., concur.

FOOTNOTES
1:
"Traverse" is defined in Black's Law Dictionary as follows:  "
Common-law pleading
.  A formal denial of a factual allegation made in the opposing party's pleading***."  Black's Law Dictionary 1506 (7th ed. 1999).  In the context of a condemnation or eminent domain proceeding, a "traverse" serves as a motion to deny the legal right of the complainant--in this case, to take land for the public purpose of the expansion of the University of Illinois,  
e.g.
, 
if the legislature has granted a municipality the authority to exercise the power of eminent domain, the property owner bears the burden of claiming and presenting evidence that the municipality lacks authority to condemn or that it has abused its discretion:  "Keller filed a 
traverse
 and motion to dismiss alleging:  (1) the City was not authorized to acquire the property by eminent domain proceedings;  (2) the ordinance did not authorize the City to acquire the property for any purpose authorized by statute;  (3) the ordinance was 'ineffective in law to vest the power of condemnation in plaintiff or to authorize plaintiff to condemn';  and (4) the City did not make a 
bona fide
 attempt to agree on the amount of compensation to be paid to Keller for the property."(Emphasis Added.)  
City of Oakbrook Terrace v. La Salle National Bank
, 186
 
Ill. App. 3d 343, 346, 542 N.E.2d 478 (1989).