STATE OF ILLINOIS MEDICAL CENTER COMMISSION, Plaintiff-Appellee, v. UNITED CHURCH OF THE MEDICAL CENTER *et al.*, Defendants-Appellants.

First District (5th Division)   No. 84—2435

Opinion filed March 31, 1986.

Samuel W. Witwer, Jr., of Witwer, Moran, Burlage & Witwer, of Chicago, for appellants.

Neil F. Hartigan, Attorney General, of Springfield, and Edward A. Scott, of Medical Center Commission, and Earl L. Neal & Associates, both of Chicago (Earl L. Neal, Michael D. Leroy, and Richard F. Friedman, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

After a bench trial, the circuit court of Cook County entered judgment for plaintiff State of Illinois Medical Center Commission (the Commission), approving the partial taking of real property from defendant United Church of the Medical Center (United Church) and awarding United Church $45,000 as just compensation for the property. On appeal, United Church argues: (1) the Commission's condemnation of the property was invalid because it failed to identify the purpose and proposed use or necessity for the taking of the property; (2) the condemnation proceedings were fatally infected with administrative bias and conflict of interest; (3) the trial court erred in its determination that United Church's fee-parking activity on the condemned property rose to the level of a secular use, thereby destroying its religious exemption status; and (4) the court erred in denying United Church's cross-petition for severance damages to the remainder property. United Church does not contest the valuation of compensation for the taken property. For the reasons set forth below, we affirm in part, reverse in part, and remand the cause for proceedings

consistent with this opinion.

This case involves an eminent domain action instituted by the plaintiff Commission pursuant to the provisions of section 7–101 of the Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 7–101 *et seq.*) On May 28, 1980, the Commission filed a petition to condemn three of 10 lots, 150' x 75', utilized by United Church as a parking lot for its employees' and parishioners' use and as leased parking to some of the area's medical personnel. The condemned property (the parking facility—Lots 1 through 3) is located at the southwest corner of Harrison Street and Ashland Avenue in Chicago, and the remainder property (the sanctuary—Lots 4 through 10) directly to the south thereof. Various constituent organizations and officials of the United Methodist Church were included as party defendants and have joined with United Church to assert a common position in its behalf as the real party in interest and occupant of both the condemned property and the remainder.

The record discloses that the Medical Center District Act (the Act) created the plaintiff Commission and conferred on it jurisdiction over a medical center district located on the west side of Chicago. (Ill. Rev. Stat. 1979, ch. 111½, par. 5001 *et seq.*) The Act expressly authorizes the Commission to acquire by eminent domain property within the district's boundaries necessary for its purposes of establishing a medical center district. Section 3 of the Act exempts property owned by religious organizations which is used for religious purposes, but also empowers the Commission to acquire property which is "used for both religious and secular purposes." Ill. Rev. Stat. 1979, ch. 111½, par. 5004.

The record further reveals that the Commission's condemnation of the property was authorized by three resolutions enacted by the Commission on June 16, 1978, September 15, 1978, and December 14, 1979. The resolutions stated that the acquisition was for the "purpose" provided in the Act. During the pendency of this case, the Commission passed a fourth resolution on July 17, 1981, more definitively defining its purpose for taking the property as "medical institutional expansion."

In response to the petition to condemn, United Church filed an original and four amended traverses, alleging that the taking was invalid because:

"(1) the Commission could not and would not divulge its actual purpose in taking the property or any proposed use for the property;

(2) the condemnation proceeding was fatally infected by a

conflict of interest in that three of the four Medical Center commissioners who voted for the definitive resolution were impermissibly related to Rush-Presbyterian St. Luke's Hospital, the alleged "behind-the-scenes" moving force which induced the Commission to act; and

(3) the property was an integral part of United Church's operation and it therefore was exempt from condemnation under the Medical Center District Act which expressly prohibits the taking of property owned by religious organizations, except parcels used for both religious and secular purposes."

On October 29, 1982, the trial court denied the traverse based on its determination that United Church's rental parking activity on the subject property was secular in nature and, accordingly, destroyed its religious exemption from condemnation of its property by the Commission. The court did not address the issues of the Commission's alleged failure or refusal to disclose the proposed use of the property or the alleged conflict of interest question.

On February 18, 1983, the trial court certified an interlocutory appeal by United Church pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308). In its application for leave to appeal, United Church raised the issues of whether the Commission adequately identified the purpose of the taking, the ultimate use to be given the property and necessity thereof, and whether United Church's parking activity was sufficient to deprive it of the statutory exemption against condemnation of religiously owned property. The application was denied by this court on May 8, 1983.

Trial of the matter was resumed by the court below in August 1984. United Church subsequently filed a cross-petition to recover severance damages to the remainder of its property, claiming curtailment of parking space, loss of ingress, light and frontage exposure. In its consideration of the cross-petition, the court stated that United Church's recovery of damages to the remainder was dependent upon whether the unities of use, contiguity and title existed between the property taken and the remainder on the date of the filing of the petition to condemn. The court found that even though United Church held title when it filed its cross-petition, it lacked title at the time of the filing of the petition to condemn on May 28, 1980. At that time, title in the remainder property was held by a predecessor Methodist congregation and later a Presbyterian church, both having been part of a combined Methodist/Presbyterian program conducted by United Church on the sanctuary property. Accordingly, the court entered judgment in favor of the Commission, approving the condemnation of

Lots 1 through 3 and awarding United Church $45,000 as just compensation for the taking of the property.

We first address United Church's contention that the failure of the Commission to specify or identify the purpose or use to which it intends to put the condemned property contravenes the Eminent Domain Act (Ill. Rev. Stat. 1985, ch. 110, par. 7—102). United Church argues that in the absence of an announced purpose tied to any future use and necessity, the Commission lacked authority to condemn its property. It relies on *People v. Young Women's Christian Association* (1981), 86 Ill. 2d 219, 427 N.E.2d 70, which addressed the existence or absence of a public purpose, future use and necessity as requisites for a taking of property. There, in finding that the condemning body failed to show a necessity for the taking for a courts' complex, our supreme court held that although the question of necessity is essentially within the power of the condemning body, a court may and should upon a traverse on the property inquire into the necessity for the use to determine whether the condemning body acted arbitrarily.

In the present case, the Commission asserts it did not act arbitrarily and that its condemnation of the subject property for medical purposes is a legally adequate specification for the taking even though the ultimate medical use or uses of the property have not as yet been determined. In support of this contention, it cites *City of Chicago v. Barnes* (1964), 30 Ill. 2d 255, 195 N.E.2d 629, which held that condemnation powers are properly exercised if the express use is for a public purpose even though the ultimate use or uses has not as yet been determined at the time of condemnation.

■ We believe no conflict exists between the Commission's position and that of United Church. Where the condemning body makes a determination of necessity for a public body to take property for a proper public purpose, the ordinance or resolution establishing the necessity creates a *prima facie* case of need for the taking in the traverse action. (*City of Chicago v. Barnes* (1964), 30 Ill. 2d 255, 195 N.E.2d 629.) If the condemning body fails to specifically make such a determination, it is not fatal to the condemnation procedure provided the evidence presented by the condemning body in the traverse hearing discloses a necessity. (*People v. Young Women's Christian Association* (1981), 86 Ill. 2d 219, 427 N.E.2d 70.) As our supreme court stated in *People v. Young Women's Christian Association,*

"the absence of a legislative finding of necessity would not be fatal if it were otherwise unequivocally established by the record that the property was necessary for Sangamon County circuit court use. The case turns on whether, lacking such legisla-

tive determination, the record contains such evidence to support the trial court's implicit finding that necessity existed." 86 Ill. 2d 219, 240, 427 N.E.2d 70.

■ Here, the General Assembly, in enacting the medical center district act creating the Commission, specifically authorized the Commission to exercise eminent domain powers to carry out its purpose with respect to property within the district. (Ill. Rev. Stat. 1979, ch. 111½, par. 5004.) We agree, as the Commission argues, that a medical purpose is a public purpose sufficient to sustain an eminent domain action even though the ultimate use or uses of the condemned property has not yet been determined. (*City of Chicago v. Barnes* (1964), 30 Ill. 2d 255, 195 N.E.2d 629.) The Commission's 1981 resolution stating the purpose of the acquisition to be for medical institutional expansion was sufficient to establish a *prima facie* case of need. The burden was then on United Church to demonstrate that the Commission acted arbitrarily in the matter.

We thus come to United Church's next argument that the Commission did act arbitrarily. United Church alleges that three members of the Commission who participated in the enactment of the resolutions for the condemnation of the subject property had a conflict of interest precluding their participation in the proceedings before the Commission which resulted in the authorization of the condemnation action. United Church charges that Commissioners Livingston, Hoffman and Roach have important links to Rush-Presbyterian St. Luke's Hospital and that their participation in the resolution proceedings was intended to benefit Rush which was having an expansion problem.

■ ■ Absent evidence of fraud, courts ordinarily do not inquire into the interest, bias or motives of a municipal body acting in a legislative capacity. (*Chicago Park District v. Kenroy, Inc.* (1980), 78 Ill. 2d 555, 402 N.E.2d 181.) Here, United Church neither alleges fraud, nor has any evidence been presented disclosing fraud by Livingston, Hoffman or Roach. Moreover, with regard to Livingston's, Hoffman's and Roach's conflict of interest because of their alleged links with Rush, we note that the medical center district act provides for public hearings in the event the Commission decides to convey real property, as well as judicial review of any decision of the Commission in such a case. (Ill. Rev. Stat. 1979, ch. 111½, pars. 5009, 5010, 5015.) Accordingly, any conflict of interest by Livingston, Hoffman or Roach can be raised by defendant or other interested parties in the required public hearing if the Commission attempts to lease or convey the subject real estate to Rush.

■ We also reject United Church's contention that the trial court

erred in finding the condemned property was not used solely for religious purposes. It argues that the income derived from the use of the property for rental parking was "miniscule" and, therefore, did not rise to the level of secular use.

The act creating the Commission expressly permits it to condemn a religious institution's property if it is used for "both religious and secular purposes." (Ill. Rev. Stat. 1979, ch. 111½, par. 5004.) Here, the record discloses that United Church continually leased space in the parking lot to personnel working in the Medical Center, Monday through Friday. Even though United Church's use of the property primarily might have been for religious purposes and as a parking facility for the use of its employees and parishioners, the fact that the property also was used for secular purposes part of the time is sufficient to deprive it of its religious exemption status. In addition, we note that the fact that the income received from the rental parking was devoted to religious purposes is not sufficient to make United Church's use of the subject property a religious use. *Scripture Press Foundation v. Annunzio* (1953), 414 Ill. 339, 111 N.E.2d 519.

Accordingly, because of our determination that the Act and resolutions disclose a public purpose and need for the eminent domain proceedings and no evidence has been presented revealing arbitrary enactment of the resolutions, as well as the fact that United Church's rental parking activity was of a secular nature, we affirm the trial court's judgment condemning the subject property.

Finally, United Church argues that the trial court's denial of its cross-petition for severance damages to its remainder property was error and infringed on its right to just compensation guaranteed by the fifth and fourteenth amendments of the United States Constitution (U.S. Const., amends. V, XIV) and article I, section 15, of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 15). We agree. The trial court's sole reason for denying the cross-petition was its belief that all three unities of use, contiguity and title must have existed between the condemned property and the remainder at the time of the initial filing of the petition to condemn. Finding that United Church lacked unity of title at the time of filing the condemnation petition, the court denied its cross-petition, even though it fulfilled the two requisite unities of use and contiguity—the parking lot was used by its parishioners and employees and adjoined the sanctuary property. United Church's only apparent remedy therefore for injury to its remainder as a result of the use of the taken property by the Commission, based on its subsequent acquisition of title to the remainder, would be an action at law when the damage, if any, occurs. *Department of Trans-*

*portation v. McGovern* (1982), 103 Ill. App. 3d 461, 464, 431 N.E.2d 437.

Despite the foregoing, no Illinois case law exists as to *when* unity of title is determined for the purpose of valuation of the condemnee's loss or injury by reason of the taking of his property in eminent domain. In *Department of Conservation v. Franzen* (1976), 43 Ill. App. 3d 374, 356 N.E.2d 1245, this court was confronted with the issue of whether beneficiaries under separate land trusts to certain parcels, were precluded from recovery of severance damages to their remainders because of an alleged lack of unity of title. We held that even though the beneficiaries did not hold legal title, they each possessed a *beneficial interest* in the property condemned and, therefore, unity of ownership *or interest* was satisfied and the beneficiaries had standing to seek severance damages to their property. In making this determination, we considered the basic question whether in light of relevant statutory and constitutional provisions the ends of justice would be served by permitting the damages to property not taken to be considered in the same proceedings in which just compensation for taken property was to be determined. We concluded that it appeared to us that " '*** the paramount constitutional requirement of just compensation must be allowed to prevail over the niceties of legal title advanced by the State.' (See also *Erly Realty Development, Inc. v. State*, 43 App. Div. 2d 301, 351 N.Y.S.2d 457 (1974); *cf. M.T.M. Realty Corp v. State*, 47 Misc. 2d 44, 261 N.Y.S.2d 815 (Ct. Cl. 1965).)" 43 Ill. App. 3d 374, 384, 356 N.E.2d 1245.

We also observe that none of the constitutional or Illinois statutes require or refer to the legal title holder or at what time in an eminent domain proceeding the unity of title or interest in property taken or damaged is to be determined. The fifth amendment of the United States Constitution provides private property shall not be taken for public use, without just compensation. (U.S. Const., amend. V.) The Illinois Constitution states "[p]rivate property shall not be taken or damaged for public use without just compensation." (Ill. Const. 1970, art. I, sec. 15.) Illinois' Eminent Domain Act provides that "[p]rivate property shall not be taken or damaged for public use without just compensation" and "any person *** [who] is the owner *or has an interest in property*, *** which will be taken or damaged" may become a party to the condemnation proceedings by filing a cross-petition, the rights of such party "thereupon to be fully considered and determined." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 110, pars. 7—101, 7—124.

We also note that it is well settled condemnation law that all per-

sons having any right, *title or interest* in the premises should be made parties to a condemnation action. *Chicago & North Western Ry. Co. v. Miller* (1911), 251 Ill. 58, 95 N.E. 1027.

Here, it is clear that United Church has an interest in the remainder property. For at least 12 years it has had the authority to control, manage and use the property and, in fact, possessed legal title to the property at the time the trial court entered its condemnation judgment. We hold therefore, in light of the above constitutional, statutory and case law relating to eminent domain, that the trial court erroneously concluded that United Church lacked unity of legal title which precluded it from filing its cross-petition for severance damages to the remainder.

For the foregoing reasons, the trial court's judgment condemning the subject property is affirmed, the court's denial of United Church's cross-petition is reversed, and the cause is remanded for a determination of the damage, if any, due United Church to the remainder of its property occasioned by the taking.

Affirmed in part; reversed in part; and remanded.

SULLIVAN, P.J., and PINCHAM, J., concur.