THE DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellant, v. CHICAGO TITLE AND TRUST COMPANY, as Trustee, *et al.,* Defendants-Appellees.

First District (6th Division)    No. 1—97—3703

Opinion filed February 5, 1999.

James E. Ryan, Attorney General, and Deutsch, Levy & Engel, Chartered (Michael J. Devine, Thomas W. Goedert, and James E. O'Halloran, Special Assistant Attorneys General, of counsel), for appellant.

Righeimer, Martin & Cinquino, P.C., of Chicago (Leo N. Cinquino and Celeste P. Cinquino, of counsel), for appellees.

JUSTICE QUINN delivered the opinion of the court:

The Department of Transportation of the State of Illinois (IDOT) appeals from a denial of its motion for judicial declaration of whole property and its motion for reconsideration. IDOT also appeals from a jury verdict awarding Chicago Title and Trust Company (Chicago

Title), as trustee under trust No. 1066693, damages for a certain parcel of property it held in trust which was condemned.

By its motion, IDOT sought a declaration that three other parcels of property, all contiguous with the parcel at issue in this case, constituted a single piece of property for purposes of determining remainder damages. However, during the pendency of this action, IDOT condemned portions of two of these other parcels of property and obtained final judgments in those separate cases.

The issue in this case is whether evidence of valuation and remainder damages submitted to the jury in the instant case was correctly confined to the parcel in this case, or should the jury have been given evidence that the other contiguous parcels were part of a larger tract of property that allowed access, thereby reducing remainder damages?

### Statement of Facts

Beginning in 1988, IDOT acquired several lots of property in northwestern Cook County at the intersection of Route 59 and Route 20. IDOT condemned three parcels of property at that location for the purpose of improving the flow of traffic on an entrance/exit ramp. For purposes of this appeal, these parcels will be designated as the "East Parcel," the "Starview Parcel," and "West Parcel 1." Prior to the condemnation of portions of these parcels, Route 20 had four lanes of traffic each 10 feet wide with no shoulders on the side of the road. Route 59 had two lanes, each 11 feet wide. After the take, Route 59 still went under Route 20, but the connecting ramps were modernized and traffic signals were placed on Route 59. Route 20 remained a four-lane thoroughfare, but the lanes were widened to 12 feet, and a median dividing traffic was installed. Route 59 was widened to four lanes.

The first parcel that was the subject of condemnation proceedings filed by IDOT, the East Parcel, was located immediately north of Route 20 and immediately west of Route 59. On September 7, 1988, IDOT filed a petition to condemn part of the East Parcel, pursuant to the "quick-take" provision of the Illinois Eminent Domain Act (Eminent Domain Act) (735 ILCS 5/7—103 (West 1994)). The East Parcel was comprised of a 10.197-acre lot immediately west of Route 59, immediately north of Route 20, and contiguous to the Starview Parcel on the East Parcel's west and north boundaries. *Department of Transportation v. Alex*, No. 88 L 51075. Pursuant to a "quick-take" proceeding, IDOT was vested with fee simple title to two strips of land, parcels 07U0004A and 07U0004B, on the East Parcel comprised of 3.229 acres, as well as a 0.801-acre temporary easement, parcel 07U0004TE, over the East Parcel. See 735 ILCS 5/7—103 (West 1994). Parcel 07U0004A

was adjacent to Route 59, and parcel 07U0004B was on the corner of Route 20 and Route 59.

As of the date of the petition, the East Parcel was not improved with sewer and water lines, but had a private well and septic system. The East Parcel is located in unincorporated Cook County and was zoned as commercial property. At the time the petition was filed, the East Parcel was vacant, except for a small diner located in the southeast corner of the property. Ten acres of the East Parcel were used as a restaurant/truck stop called "Connie's," the Starview Parcel at the time was used as a drive-in movie theater, and West Parcel 1 was used as an auto salvage company.

Prior to April 19, 1988, title to the East Parcel was held by Marco J. Muscarello, as trustee of a land trust under trust number 1. On April 19, 1988, Muscarello and the Boulevard National Bank Association (Boulevard Bank) trust entered into articles of agreement for a trustee's deed to sell the East Parcel to the Boulevard Bank trust. The terms of the agreement were that possession was to be delivered within 90 days of the "initial closing," on or about November 15, 1988. The court entered an order vesting title in IDOT to the condemned portion of the property on February 9, 1989. On February 28, 1989, the court entered an order finding that Muscarello, as trustee, was the owner of the East Parcel, and ordering the State Treasurer to pay Muscarello $615,700 for preliminary just compensation. On January 23, 1991, Muscarello and the Boulevard Bank trust completed the "Final Closing" under the articles of agreement for trustee's deed.

The Starview Parcel is the subject of the underlying condemnation proceeding, which was filed on August 18, 1989, pursuant to the "quick-take" provision (735 ILCS 5/7—103 (West 1994)). *Department of Transportation v. Chicago Title & Trust Co.*, No. 89 L 51015. The Starview Parcel was owned by Chicago Title, as trustee of a land trust under trust number 1066693. The Starview Parcel is contiguous to the East Parcel on the East Parcel's west and north sides. The Starview Parcel is immediately north of Route 20, and the majority of the property is 715 feet west of Route 59, but a small northeast portion extends eastward along the northern boundary of the East Parcel to Route 59. At the time of the condemnation petition, the Starview Parcel consisted of 26.324 acres located in unincorporated Cook County near the villages of Bartlett and Streamwood. The Starview Parcel was also zoned as commercial property by Cook County. At the time of the petition, the Starview Parcel was vacant, improved only with a drive-in movie theater, the Starview Drive-in Theater, that was no longer in operation. The Starview Parcel had no sewer or water lines, but had a private well and septic system.

Pursuant to a "quick-take" proceeding, IDOT was vested with fee simple title to a 0.315-acre strip of frontage property along Route 20, parcel 07U0003A, and a 0.126-acre strip of frontage property along Route 59, parcel 07U0003B. See 735 ILCS 5/7—103 (West 1994). IDOT also acquired all access rights to Route 20 from the Starview Parcel.

Frank Marsico was the sole benficiary of the land trust of the Starview Parcel. On March 1, 1988, Marsico entered into an agreement with Highland Development Company (Highland Development), an Illinois corporation, pursuant to a trustee's deed to allow Highland Development to purchase the Starview Parcel. The shares of Highland Development were held entirely by three people: Gregory Matic, John Wilson, and Francis Wilson. Matic testified at his deposition that Highland Development had obtained numerous engineering site plans, reports, and a plat of survey depicting all four parcels, for planning the development of the East Parcel, Starview Parcel, and West Parcel 1 as a single, unified commercial retail shopping center.

On August 15, 1988, Chicago Title entered into an agreement with Boulevard Bank, as trustee under a land trust under trust number 8767 (Boulevard Bank Trust), and executed a "Memorandum of Articles of Agreement for Deed" (Articles of Agreement), which was intended to evidence the Boulevard Bank Trust's interest and right to purchase the Starview Parcel in accordance with the March 1, 1988, trustee's deed. The Articles of Agreement document was recorded with the Cook County recorder of deeds. Under the Articles of Agreement, possession of the Starview Parcel was to be delivered to the Boulevard Bank Trust at the time of the "Initial Closing," or about August 3, 1988. Subsequently, on January 23, 1991, Chicago Title and the Boulevard Bank Trust completed the "Final Closing" under the Articles of Agreement, at which time legal title to the Starview Parcel was transfered to the Boulevard Bank Trust.

On October 24, 1989, the court entered an order vesting title to the parts taken of the Starview Parcel, the frontage along Route 20 and Route 59 and the access rights to Route 20, in IDOT. On December 5, 1989, the court entered an order finding Chicago Title to be the owner of the Starview Parcel, as trustee, and ordering payment of preliminary just compensation to Chicago Title.

Also at issue in the present appeal are two additional parcels. The first of these additional parcels, West Parcel 1, consists of approximately nine acres located north of Route 20 and immediately west of Parcel 1. IDOT filed a complaint to condemn a portion of West Parcel 1 on August 10, 1989. *Department of Transportation v. La Salle National Bank*, No. 89 L 50967. West Parcel 1 was zoned as commercial property and consisted of vacant land, with a barn at the

southern boundary of the property. On October 13, 1989, title to the part taken vested in IDOT. The court entered a final judgment order on May 22, 1990, for a preliminary and final just compensation award to Gershon Hammer, as sole beneficiary of La Salle National Bank land trust 10—027764—90. Hammer withdrew the award, and the award was then made payable to La Salle National Bank.

Prior to this final judgment order, Hammer had contracted to sell West Parcel 1 in a purchase agreement dated May 19, 1988, to the Boulevard Bank Trust. The purchase agreement provided as a condition precedent to closing that the sellers of the Starview Parcel and the East Parcel must be ready, willing, and able to convey those properties at the time of the closing of West Parcel 1. The closing was held on February 1, 1991, at which time legal title to West Parcel 1 passed to the Boulevard Bank Trust.

The second of these additional parcels, West Parcel 2, was not subject to a condemnation proceeding. West Parcel 2 is a 9.3-acre plot of undeveloped property, also zoned as commercial property, located north of Route 20 and immediately west of West Parcel 1. Thus, on the plat of survey, the lots are contiguous, from east to west, with the East Parcel being the easternmost parcel, then the Starview Parcel, West Parcel 1, and West Parcel 2 being the westernmost parcel. West Parcel 2 was sold on September 19, 1989. The seller was the Jel Sert Company, an Illinois corporation, and the buyers were the Boulevard Bank Trust and Highland Development. The real estate sales contract closed on July 30, 1990, at which time legal title to West Parcel 2 passed to the Boulevard Bank Trust.

In the condemnation proceedings for the East Parcel, the Boulevard Bank Trust filed a cross-petition for remainder damages on November 16, 1988, alleging that the condemned portions of the East Parcel were "part and parcel of a larger tract of land," described in an attached legal description consisting of the East Parcel, Starview Parcel, and West Parcel 1.

On November 28, 1989, the same counsel representing the Boulevard Bank Trust in the condemnation litigation for the East Parcel also appeared in the condemnation proceedings for the Starview Parcel on behalf of defendants Chicago Title, the Boulevard Bank Trust, and Starview Theater (defendants). On May 17, 1990, the Boulevard Bank Trust filed a cross-petition for remainder damages in the condemnation litigation for the Starview Parcel, alleging that the condemned portions of the Starview Parcel were part of a larger tract consisting only of the whole of the Starview Parcel.

On September 25, 1992, IDOT filed a motion to consolidate the condemnation proceedings for the Starview Parcel and the East Parcel.

The trial court granted the motion for purposes of discovery, but denied the motion to consolidate the cases for trial. In a written ruling issued January 19, 1993, the trial court found that consolidation for discovery would be proper because it would serve the purpose of judicial economy and because the cases involved similar issues and evidence, but found that a consolidated trial of the two parcels would confuse the jury, particularly with respect to valuation evidence.

On April 2, 1993, IDOT filed a motion for judicial declaration of whole property, seeking a judicial finding that the remainder property for purposes of determining remainder damages included not only the Starview Parcel, but also the East Parcel, West Parcel 1 and West Parcel 2. IDOT alternatively argued that, at the least, the Starview Parcel, the East Parcel, and West Parcel 1 constituted the remainder property. IDOT argued that the four parcels were subject to common ownership and that discovery had revealed that defendants intended to develop the four parcels as a unified commercial development. The trial court denied this motion on August 3, 1993. Defendants were granted leave to file an amended cross-petition for damages, which sought remainder damages for the Starview Parcel only, instead of the larger tract comprised of all four parcels.

On November 22, 1996, IDOT filed a motion to reconsider the August 3 order in the East Parcel litigation and adopted the same motion in the Starview Parcel litigation. IDOT argued that if the four parcels were not declared to be a single remainder tract, the Boulevard Bank Trust could claim that the Starview Parcel had reduced access to Route 59 and a total loss of access to Route 20, when the Starview Parcel had access to Route 59 across the East Parcel and had access to Route 20 across either West Parcel 1, West Parcel 2, or both. After hearing argument on the motion, the trial court denied IDOT's motion to reconsider. Thus, only the Starview Parcel was considered in determining remainder damages at trial.

At trial, defendants presented evidence as to remainder damages as to the Starview Parcel's purported total lack of access to Route 20 and reduced access to Route 59 due to the taking of the frontage portions of the Starview Parcel.

Brian Bottomly, a condemnation engineer, testified for IDOT. Bottomly was a full-time employee of IDOT for 12 years. Bottomly testified that the whole property was 26.324 acres, the part taken was 0.441 acres, and the remainder property was 25.883 acres. Bottomly testified that IDOT was acquiring all of the property rights of access from the remainder property to Route 20.

Gerald Lindgren, a transportation engineer, also testified for IDOT. Lindgren had 34 years of experience in the design of access to numer-

ous shopping centers, industrial parks, public facilities, and residential areas. Lindgren testified that IDOT's taking eliminated all of the rights of access to Route 20. Lindgren testified that, after the taking, one could not get to or from the Starview Parcel onto Route 20. Lindgren further testified that the East Parcel separated the remainder of the Starview Parcel from the corner of Route 20 and Route 59. However, Lindgren testified that access to the Starview Parcel via Route 59 was better after the take. In Lindgren's opinion, access to the Starview Parcel was safer, and the property could function after losing its Route 20 access. On cross-examination, Lindgren testified that if the Starview Parcel had been developed as a shopping center before the take, it could have had three driveways on Route 20 and that there could be no driveways after the take.

IDOT next presented the testimony of two land-planning experts.

First, Rolf Campbell testified. Campbell testified that the Starview Parcel's highest and best use before the take was the development of a 240,000-square-foot shopping center on the whole property of the Starview Parcel. After the take, with all access to Route 20 eliminated, the Starview Parcel's highest and best use would be limited industrial. An industrial use would not generate traffic like a shopping center would, and such a use was allowed under the commercial zoning of the area.

Campbell opined that there was a need and demand for a shopping center before the take because of the existing and projected population statistics. Campbell testified that he planned the Villa Olivia 2,000-residential-unit development in 1989 across Route 20 and a half mile west of the Starview Parcel. Immediately north of the Starview Parcel were two townhouse projects, which began in 1990. Within five miles of the Starview Parcel, the population was 160,000 people. There was no other community shopping center until four or five miles west in Elgin and 2.2 miles south on Route 59 at Stearns Road.

Alan Kracower was IDOT's other land-planning expert. Kracower had been a land planner for 37 years, with experience in planning shopping centers and residential and industrial developments. Kracower had been familiar with the Starview Parcel for 20 years. Kracower testified that there was a lack of development in the area, using exhibits of aerial photographs of the area. Kracower opined that the Starview Parcel could not be used for a shopping center because there was no demand for such a use on the Route 20 corridor. Kracower testified that the best use for the Starview Parcel before the take, based on the demographics, his review of Lindgren's report, his experience, and the trend of development, was a mixed use of "destination" commercial and low-intensity industrial and residential. After

the take, the highest and best use for the property was residential and industrial. Any destination commercial use was lost because of the loss of access to Route 20.

IDOT's valuation opinion witness, Douglas Adams, testified that the highest and best use of the Starview Parcel before the take was commercial, such as office-research or office-warehouse. Adams testified that the fair market value of the portion taken was $33,600, or $1.75 per square foot. Adams considered four comparable sales in the area in arriving at that figure. In Adams' opinion, the highest and best use after the take was the same as before, despite the loss of all access rights to Route 20, and the value of the remainder was $1.50 per square foot. Adams testified that the damages to the remainder of the Starview Parcel were $281,900. On cross-examination, Adams testified that the 15% figure constituting damage to the remainder was based on the fact that accessibility had been reduced by 15%.

Joseph E. Zgonina, a traffic and civil engineer, testified for defendant. Zgonina had prepared the design and supervised the extension of a sewer system to the interchange of Route 20 and Route 59 in the 1980s and was familiar with the Starview Parcel. Zgonina testified that Route 59 is one of the major north/south collector arterial highways in the Chicagoland area, with large volumes of traffic. Route 20 is a major east/west four-lane highway. According to the state and local highway department maps, which list traffic flow statistics for 1989, Route 59 carried between 24,000 to 25,000 cars per day past the Starview Parcel, and Route 20 carried between 26,000 to 29,000 cars per day past the Starview Parcel.

Zgonina testifed that before the taking of access rights to Route 20, the Starview Parcel was a viable commercial site and could have had a safe and efficient ingress and egress to Route 20. Zgonina testified that "based on the length of the property and the presence of other driveways in close proximity to the site or on adjacent properties," the Starview Parcel could have been developed with a full access point on Route 20. In Zgnonina's opinion, prior to the take, the Starview Parcel could have had one full driveway and two right in/right out driveways along its frontage on Route 20, with one full driveway along the frontage on Route 59. Zgonina testified that the Starview Parcel did not have commercially viable access after the take. Without the access to Route 20, all traffic into the property would be forced onto the intersection ramps. Zgonina testified that, given the location of left-turn lanes on the adjoining residential developments, the Starview Parcel could not have had a safe left-turn lane from Route 59 for either a commercial or industrial use. According to Zgonina, a 25-acre shopping center would generate a high volume of cars that would need

to turn left into the Starview Parcel and would back up traffic along Route 59. The same would be true for an industrial or residential development. There would be no protected left-turn lane on Route 59, thus making such access unsafe and inefficient. On cross-examination, Zgonina testified that the location of Connie's Restaurant on the East Parcel along Route 20 could have reduced the number of driveways into the Starview Parcel before the take of the access rights.

Defendants' valuation opinion witness was Arthur Sheridan, a real estate broker and appraiser. Sheridan testified that the Starview Parcel's highest and best use before the take was a shopping center, given the ingress and egress to two major highways, the potential for growth in the area, the zoning, availability of utilities, and the trend of development. IDOT later cross-examined Sheridan as to the lack of any shopping center for several miles in the area. However, Sheridan testified that the fact that shopping centers of over 200,000 square feet were developed at Stearns Road and Route 59 showed that the area's population was sufficient for a shopping center before the take. Sheridan valued the whole of the Starview Parcel as of August 18, 1989, at $2,580,000, or $2.25 per square foot. Sheridan valued the taken portion of the property also at $2.25 per square foot, which, for 0.441 acres or approximately 19,000 square feet, rounded to a figure of $43,200. In calculating the fair market value of the Starview Parcel, Sheridan considered four comparable sales in the area. Sheridan valued the remainder of the Starview Parcel at $1.10 per square foot, with damages to the remainder in the amount of $1,296,586. Thus, the value of the remainder before the take was $2,536,800; after the take, the value was $1,240,214.

The jury returned a verdict awarding defendant $43,222.50 for the property taken, which represents the calculation of the value of $2.25 per square foot times 0.441 acres, which is 19,210 square feet. The jury also awarded $1,071,089.85 in remainder damages. This figure is between the estimations of IDOT's and defendants' witnesses as to the value per square foot of the remainder. IDOT's witness, Adams, valued the damages to the remainder at $281,900, and defendants' witness, Sheridan, valued the damages to the remainder at $1,296,586. Thus, the total compensation to defendant was $1,114,312.35.

## DISCUSSION

### I. RULING ON MOTION FOR JUDICIAL DECLARATION OF WHOLE PROPERTY

The issue presented by the instant case is whether the valuation evidence on remainder damages was correctly confined by the trial

court to the Starview Parcel only, or whether the valuation evidence should have included the other parcels, which were condemned separately and valued on different dates. IDOT alternatively argues that evidence of the remainder damages should have included all of the four parcels, including the Starview Parcel. IDOT argues that, at a minimum, the Starview Parcel, the East Parcel, and West Parcel 1 constituted a single remainder tract. In essence, to accept IDOT's argument, we would have to rule that the valuation of remainder property may be changed after other contiguous parcels are obtained by the owner of the condemned parcel.

■ The United States Constitution provides that private property shall not be "taken for public use, without just compensation." U.S. Const., amend. V. The Illinois Constitution provides that this state is prohibited from taking or causing damage to private property without just compensation. Ill. Const. 1970, art. I, § 15. The purpose of these provisions is to make the owner whole, not to place him in a better position than he was before his land was taken. *People ex rel. Director of Finance v. Young Women's Christian Ass'n*, 74 Ill. 2d 561, 572 (1979); *Department of Transportation v. White*, 264 Ill. App. 3d 145, 149 (1994).

■ The question of whether certain parcels of land constitute one parcel for purposes of ascertaining remainder damages in an eminent domain action is a question of law. *Department of Conservation v. Franzen*, 43 Ill. App. 3d 374, 378 (1976). This court reviews questions of law *de novo*. *Statler v. Catalano*, 293 Ill. App. 3d 483, 487 (1997).

■ To sustain a cross-petition for damages to remainder property, a property owner must show unity of use, contiguity, and unity of title. *Lake County Building Comm'n v. La Salle National Bank*, 176 Ill. App. 3d 237, 242 (1988). In deciding whether parcels are contiguous, the court must consider the properties as they existed at the time the condemnation proceeding was commenced. *Lake County*, 176 Ill. App. 3d at 242-43. Here, the court ruled that there was no unity of title of the parcels and therefore the evidence of the damage to the remainder was properly restricted as to the Starview Parcel. IDOT did not have a transcript prepared of the court's reasoning in ruling on IDOT's motion.

■ IDOT argues that there was unity of title among the parcels at the time of trial in this case. There is no authority in Illinois delineating a rule as to when unity of title is determined. The state and federal constitutions provide no guidance, and the Illinois Eminent Domain Act also does not specify a rule as to when to determine unity of title. The Eminent Domain Act does, however, fix the date of valuation of condemned property as of the date of filing the complaint to condemn.

Section 7—121 provides:

"§ 7—121. Value. Except as to property designated as possessing a special use, the fair market value of property in a proceeding in eminent domain shall be the amount of money which a purchaser, willing but not obligated to buy the property, would pay to an owner willing but not obliged to sell in a voluntary sale, which amount of money shall be determined and ascertained as of the date of filing the complaint to condemn. In the condemnation of property for a public improvement there shall be excluded from such amount of money any appreciation in value proximately caused by such improvement, and any depreciation in value proximately caused by such improvement. However, such appreciation or depreciation shall not be excluded where property is condemned for a separate project conceived independently of and subsequent to the original project." 735 ILCS 5/7—121 (West 1994).

Any activity regarding the property after the filing of the complaint to condemn is irrelevant as to valuation in an eminent domain proceeding. *County of St. Clair v. Wilson*, 284 Ill. App. 3d 79, 89 (1996). The only question for a jury to determine in an eminent domain proceeding is the just compensation to be paid to the owner of the property sought to be condemned. *Department of Transportation v. White*, 264 Ill. App. 3d 145, 149 (1994).

■ Logically, the unity of title in a remainder case should be determined by examining who the owner of the property was at the time the petition to condemn was filed, because the valuation of the property is determined as of the date the complaint for condemnation is filed.

IDOT cites *State of Illinois Medical Center Comm'n v. United Church of the Medical Center*, 142 Ill. App. 3d 498 (1986), for the proposition that a court can consider the unity of title issue at the time a condemnation judgment is entered. In determining that the United Church had sufficient interest in the remainder property to maintain a cross-petition for remainder damages, this court looked to the fact that the church had the authority to control, manage and use the property for 12 years prior to the judgment. *United Church*, 142 Ill. App. 3d at 506. What is troubling is that this court also mentioned the fact that the church in fact possessed legal title to the property at the time the trial court entered its condemnation judgment. *United Church*, 142 Ill. App. 3d at 506.

We decline to follow *United Church* because the issue on appeal in *United Church* was limited to the question of which persons could file a cross-petition for remainder damages and did not involve the issue of the valuation of remainder property. *United Church* is also distinguishable in that it dealt with the issue of determining which party

had an interest in the remainder property of a single parcel and not with the issue of determining the precise boundaries of the remainder property. In any event, *United Church* does not support IDOT's position that unity of title is to be determined at the time of trial. *United Church* merely stated that unity of title at the time a condemnation judgment is entered may be considered when determining whether a person may file a cross-petition for remainder damages. *United Church*, 142 Ill. App. 3d at 506.

IDOT relies on *Department of Conservation v. Franzen*, 43 Ill. App. 3d 374 (1976), for its holding that two parcels of property may constitute one parcel for purposes of condemnation when the two parcels are owned by separate trusts but these trusts have identical beneficiaries. However, *Franzen* was not a valuation case. While *Franzen* did hold that the identical beneficiaries of two separate trusts could file a cross-petition seeking remainder damages even though a portion of only one of the parcels of land had been condemned, the facts of that case are inapposite. At the time the Department of Conservation filed the complaint for condemnation, the two contiguous parcels of land were owned by the two trusts that shared the identical beneficiaries. The appellate court did not discuss whether the valuation of the remainder was affected by its holding. Here, the parcels of land affected by the condemnation were owned by separate trusts with different beneficiaries at the time the condemnation complaints were filed. To hold that the remainder value of the parcels should have been determined after the Boulevard Bank Trust acquired title to the parcels would require that the value of the parcels be determined at a time later (by approximately two years) than when the complaint was filed. This would be in violation of the Eminent Domain Act. See 735 ILCS 5/7—121 (West 1994); *Wilson*, 284 Ill. App. 3d at 89.

Two other cases cited by IDOT, *Department of Public Works & Buildings v. Greenlee*, 63 Ill. App. 2d 425 (1965), and *Department of Public Works & Buildings v. Kelly*, 40 Ill. App. 3d 896 (1976), are also distinguishable. In *Greenlee*, the Department of Public Works filed a petition to condemn a five-foot strip of defendant's property and limit defendant's access rights to Route 5. *Greenlee*, 63 Ill. App. 3d at 428. The Department thereafter decided not to limit access to the road. *Greenlee*, 63 Ill. App. 3d at 428. Thus, the amount of the actual remainder property changed, and remainder damages decreased. The trial court refused to allow the jury to consider this evidence and this court reversed. Here, the amount of the remainder property of the Starview Parcel remained the same, and IDOT did not change its plans to cut off the parcel's access to Route 20. Here, there was no "fictitious" loss of access.

Similarly, *Kelly* is distinguishable because there was no real loss of access in that case. In *Kelly*, the trial court erred by excluding stipulations offered by the state setting forth alternative routes of access it was willing to provide. *Kelly*, 40 Ill. App. 3d at 908. This ruling by the trial court artificially increased the amount of remainder damages based on the argument that the remainder property was landlocked. Here, in contrast, there was no offer of alternative access by IDOT. Rather, the bounds of the Starview Parcel and the condemned portions were clearly set forth for the jury, and thus we find no error.

Here, it is irrelevant that there was unity of title at the time of trial. The valuation of the remainder is determined at the time the condemnation petition is filed, whoever the owner of the property may be. The fact that the remainder property becomes part of a larger parcel after the filing of the petition thus cannot increase or decrease the value of the original parcel of property. Therefore, for valuation purposes, it does not matter if there is a later unity of title among other parcels. Thus, the trial court's ruling on IDOT's motion for judicial declaration of whole property was proper.

■ Furthermore, we reject IDOT's argument that the articles of agreement for trustee's deed were sufficient indicia of ownership such that the other parcels should have been considered as part of one tract of land. Articles of agreement for a trust deed are sufficient indicia of ownership to name the trust in the condemnation complaint. See 735 ILCS 5/7—124 (West 1994). They also may be sufficient indicia of ownership or interest in land under the *United Church* case such that a purchaser could file a cross-petition for remainder damages. See *United Church*, 142 Ill. App. 3d at 506. However, articles of agreement for a trust deed do not warrant changing the valuation of a condemned piece of property subsequent to the filing of the condemnation complaint merely because legal title has passed. The valuation of the property must be made as of the date of the filing of the condemnation complaint. 735 ILCS 5/7—121 (West 1994).

In addition to rejecting IDOT's argument for the reasons stated above, as a practical matter, IDOT's argument should be rejected where it is untimely, as two of the parcels involved, the East Parcel and West Parcel 1, have already had their remainder valuation adjudicated.

■ A prior judgment may preclude a subsequent action under both *res judicata* and collateral estoppel. *Housing Authority v. Young Men's Christian Ass'n*, 101 Ill. 2d 246, 251 (1984). The doctrine of *res judicata* provides that a final judgment on the merits is conclusive as to the rights of the parties in that case and constitutes an absolute bar to a later action involving the same claim. *Housing Authority*, 101 Ill.

2d at 251. The doctrine of collateral estoppel applies when a party participates in two separate cases arising on different causes of action, as here, and "some controlling fact or question material to the determination" of both cases has already been adjudicated against that party in a prior case. *Housing Authority,* 101 Ill. 2d at 252.

*Housing Authority,* 101 Ill. 2d 246, involved a dispute over the ownership of a parcel of land. However, the court in that case found that the ownership of the parcel had already been determined long ago in a 1932 federal condemnation suit. The court in *Housing Authority* thus determined that the two cases were "substantially the same." *Housing Authority,* 101 Ill. 2d at 254.

■ Here, the ownership and valuation of the other parcels has already been adjudicated. As to the East Parcel, the circuit court in that case entered an order on February 28, 1989, that Marco Muscarello was the owner. The final judgment order was entered in that case on June 19, 1997. The notice of appeal for the instant case was filed on September 30, 1997, but no appeal was taken from the final judgment order in the East Parcel case. A just compensation award was paid to Marco Muscarello, as trustee. *Department of Transportation v. Alex,* No. 88 L 51075.

As to West Parcel 1, the circuit court in that case entered a final judgment order on May 22, 1990, for a just compensation award to Gershon Hammer as the owner of the property. (Hammer later withdrew that award, and the award was then made payable to La Salle National Bank as trustee; Hammer was the beneficiary.) *Department of Transportation v. La Salle National Bank,* No. 89 L 50967.

The remainder damages as to these parcels have already been determined and awarded to the appropriate parties. IDOT cannot now argue that the remainder damages of any of the parcels have decreased due to a subsequent acquisition of these properties. The issue of who held title to the other parcels, as well as the valuation of those parcels, was properly determined by the circuit courts as of the date of the filing of the complaints to condemn.

Thus, the trial court's ruling on IDOT's motion for judicial declaration of whole property is affirmed.

## II. JURY VERDICT

IDOT also argues that the jury award was outside the range of value testified to by the valuation witnesses and should be vacated.

■ Where an award is made by a jury in an eminent domain proceeding in which the evidence is conflicting and the jury views the property and fixes the amount of compensation within the range of evidence, the jury's verdict will not be disturbed unless there has been a

clear and palpable mistake or a showing that the verdict was the result of passion or prejudice. *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 250 Ill. App. 3d 665, 686 (1993).

Here, the jury's verdict was within the range of testimony adduced at trial. IDOT's valuation witness, Douglas Adams, testified that the fair market value of the land taken from the Starview Parcel was $33,600, or $1.75 per square foot, and that the damages to the remainder property were $281,900. Defendants' valuation witness, Arthur Sheridan, testified that the fair market value of the land taken from the Starview Parcel was $43,200, and that the damages to the remainder were $1,296,586. The jury reached a verdict that the value of the property taken was $43,222.50. This valuation was based on defendants' witness' calculation. However, unlike Sheridan, the jury did not round off the number of square feet taken. The jury calculated the fair market value based on 0.441 acres, which is 19,210 square feet. The jury awarded $22.50 more than Sheridan testified was appropriate because the jury included the additional 10 square feet taken, and thus the verdict was within the range of evidence presented. Also, there is no indication anywhere in the record that the jury's verdict was the result of passion or prejudice. The jury's award is affirmed.

Defendant argues that the admission of IDOT's valuation witness' testimony (Adams) as to comparable sales was error and that the witness lacked expertise.

The condemnor has the burden of proving the fair market value of the property being taken. *Cook County v. Holland*, 3 Ill. 2d 36, 40 (1954); *White*, 264 Ill. App. 3d at 150. The comparable sales approach is an appropriate method for valuing the condemned property here. See *Department of Transportation ex rel. People v. Central Stone Co.*, 200 Ill. App. 3d 841, 845 (1990). This approach looks to, among other factors, comparable sales of property based on similarities in locale, character, time, market conditions, and proximity. *Central Stone*, 200 Ill. App. 3d at 845.

In condemnation cases, the admission and exclusion of evidence as to comparable sales rest entirely in the discretion of the trial court. *Department of Transportation ex rel. People v. First National Bank*, 241 Ill. App. 3d 601, 605 (1993). The law in Illinois is well established that the improper admission or exclusion of value evidence in condemnation cases does not constitute reversible error when there are other witnesses and evidence as to value on both sides, and the jury had the opportunity to view the property and weigh the conflicting evidence. *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 163 Ill. 2d 498, 506 (1994). Here, the trial court allowed both sides to present evidence as to comparable sales,

the jury had the opportunity to view the property, and so the trial court did not abuse its discretion in admitting Adams' testimony.

Therefore, for the above-stated reasons, we affirm the trial court's ruling on IDOT's motion for declaration of whole property, as well as the jury's verdict and damage award.

Affirmed.

BUCKLEY and ZWICK, JJ., concur.