THE DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellant, v. JAMES BOLIS *et al.*, Defendants-Appellees.

Third District    No. 3—99—0359

Opinion filed May 23, 2000.

placeholder

James E. Ryan, Attorney General, of Chicago, and Thomas L. Kilbride (argued), of Rock Island, for appellant.

Samuel S. McHard (argued), of Law Office of Samuel S. McHard, of Rock Island, for appellees.

JUSTICE HOLDRIDGE delivered the opinion of the court:

This appeal involves a claim for eminent domain filed by the Illinois Department of Transportation (IDOT) against James and Jeri Bolis in order to acquire title to 1.036 acres of their property. IDOT sought to acquire title to the land as well as a temporary easement on an additional .122 acres. The land was needed by the state for a road improvement project. After trial, the jury awarded the Bolises $41,468; $5,768.45 for the taken property, $33,000 for damages to the remaining property, and $2,700 compensation for the temporary easement. IDOT appeals.

. Plaintiff-appellant, the Illinois Department of Transportation, filed a complaint for condemnation and a motion for immediate vesting of title seeking title to 1.036 acres owned by James and Jeri Bolis (the Bolises). The Bolises own a 58.6-acre farm which includes an 18.747-acre apple orchard. Of the acreage sought by IDOT, .728 acres of the area is existing public right-of-way road. The state sought the land for IDOT's Illinois Highway 192 improvement project. Improvement plans include widening the highway, expanding the shoulders, resurfacing, drainage improvements, and the addition of turn lanes. The project required the state to take a 12- to 17-foot strip of ground along the front of the Bolises' property. Once complete, the project would move the existing right-of-way, which is currently 37 feet from the apple shed, to 20 feet in front of the Bolises' 684-square-foot apple shed. The Bolises' property is zoned agricultural and also includes a machine shed, two grain bins, a barn, and a garage. The apple orchard contains 1,000 apple trees. IDOT also requires a temporary easement on the Bolises' land for the duration of the project. A jury trial to determine the amount of compensation owed to the Bolises began on December 2, 1998.

IDOT's appraisal witness, Robert Hutchinson, a licensed real estate broker and appraiser, testified regarding the value of the property in terms of the whole property and the portion that the state would take as well as the damages to the remaining property. Hutchinson testified that the Bolises' property had a fair market value of $328,160, or $5,600 per acre. Hutchinson also testified that the value of the taken 1.036 acres is $2,800, based on the fact that of the total 1.036 acres taken, .72 acres were located in the existing right-of-way. IDOT would take an additional .308 acres of land on one side of the existing right-of-way. To complete the project, the state must also temporarily construct an easement of .122 acres to reconstruct

entrances to the property. Hutchinson valued the temporary easement at $265. Hutchinson also testified that the project would damage the remaining property in the amount of $8,758. Hutchinson appraised the 57.564 acres remaining after the project at $316,602. The proposed total compensation to the Bolises for the road improvement project was $11,823.

Hutchinson's damage evaluation was based, in part, on the following factors: (1) the loss of parking area in the semi-circular drive in front of the apple shed; (2) the loss of 11 apple trees; (3) the loss of one elm tree, two poplar trees, and a fence on the west side of the property; (4) the cost of moving a utility pole, security light, and electrical service; and (5) the cost of moving three apple signs and a portable center sign located within the semi-circular drive. Hutchinson also noted that the points of access to the property would remain the same and that the front porch of the apple shed would remain as a functional loading dock. The Bolises dispute that point and assert that the porch could no longer be used as a loading dock. The Bolises moved to strike Hutchinson's appraisal testimony, arguing that his opinions were based on a new appraisal which was prepared shortly before the trial and not tendered to Bolises counsel until trial. The trial court denied the motion and ruled that it would allow Bolises' counsel latitude to discuss the significance of the unit rule on cross-examination.

Jacqueline Goodman, a licensed real estate broker and appraiser, offered appraisal testimony for the Bolises. Goodman valued the property as a whole at $324,400, or $5,536 per acre. She determined the value of the taking, with its existing land improvements, to be $6,379.30, and concluded that the project damaged the remaining property by an additional $61,337.16, leaving the property worth $256,648.84 after the project. Goodman's evaluation was based on the loss of two rows of apple trees, the cost of building a new loading dock, parking lot and fence, relocating signs and a light pole, and removing trees. Goodman testified that, based on the access it provided to the land, the easement was worth $6,300.

After trial, a jury awarded the Bolises $41,468; $5,768.45 for the taken property, $33,000 for damages to the remaining property, and $2,700 for the easement. IDOT filed a motion for a new trial, which was denied by the court. IDOT now appeals the trial court's decision.

IDOT first argues that the trial court erred when it allowed an expert witness land appraiser, Goodman, to opine as to the damages to the remainder based on a dollar-for-dollar reduction in property value equal to the cost-to-cure bids. IDOT asserts that the damages to the remainder should only have been considered in terms of its diminish-

ment of whole fair market value, not the cost-to-cure expenses as individual items. IDOT contends that "the unit rule" requires that the value of the property must be considered as a whole. When Goodman testified at trial, IDOT objected to her use of the cost-to-cure method to calculate the value of the remainder of the property, contending that while an appraiser may consider the cost to cure, she must determine the value before and after the taking and may not present evidence to the jury on the cost to cure. See *Department of Transportation v. Quincy Coach House, Inc.*, 64 Ill. 2d 350, 355-56 (1976); *City of Freeport v. Fullerton Lumber Co.*, 98 Ill. App. 3d 218 (1981). Moreover, IDOT contends, while a testifying witness may consider the costs of rehabilitation, the witness may not offer specific figures for the costs. IDOT argues that Goodman's testimony includes specific dollar-for-dollar costs of rehabilitation as the exact measurement of damages and the diminishment of the fair market value of the property.

The Bolises, conversely, argue that cost-to-cure evidence is admissible as the basis of an expert witness' opinion regarding the diminution of the value of the remainder. See *Department of Public Works & Buildings v. Bloomer*, 28 Ill. 2d 267 (1963). The Bolises contend that the information assists the jury to understand the expert's analysis and that the jury can then make a more accurate assessment as to the damage to the remainder. The Bolises further assert that, without such expert witness testimony, the jury would have no basis for the expert's opinions, which could lead to speculative awarding of damages. Additionally, the Bolises point out that the state's own manual regarding appraisal requirements provides for consideration of cost-to-cure items including estimates of costs provided by companies or persons involved in the related business (bids).

■ ■ The standard of review applicable to eminent domain proceedings is whether the trial court abused its discretion, acted arbitrarily, exceeded the bound of reason, and ignored the applicable law. *Forest Preserve District v. Marquette*, 208 Ill. App. 3d 823, 826 (1991). The only question for a jury to determine in an eminent domain proceeding is the just compensation to be paid to the owner of the property sought to be condemned. *Department of Transportation v. White*, 264 Ill. App. 3d 145, 149 (1994). Where an award is made by a jury in an eminent domain proceeding in which the evidence is conflicting and the jury views the property and fixes the amount of compensation within the range of evidence, the jury's verdict will not be disturbed unless there has been a clear and palpable mistake or a showing that the verdict was the result of passion or prejudice. *Department of Transportation v. Chicago Title & Trust Co.*, 303 Ill. App. 3d 484, 499-500 (1999); *Illinois State Toll Highway Authority v. Heritage*

*Standard Bank & Trust Co.*, 250 Ill. App. 3d 665, 686 (1993). A condemnation award will be set aside on review and a new trial directed if the trial court made an erroneous ruling that might have misled the jury and that amounts to prejudicial error. *Illinois State Toll Highway Authority v. American National Bank & Trust Co.*, 162 Ill. 2d 181, 196 (1994); *Department of Public Works & Buildings v. Oberlaender*, 42 Ill. 2d 410, 418 (1969).

■ The law in Illinois is well established that the improper admission or exclusion of value evidence in condemnation cases does not constitute reversible error when there are other witnesses and evidence as to value on both sides, and the jury had the opportunity to view the property and weigh the conflicting evidence. *Chicago Title*, 303 Ill. App. 3d at 500-01; *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 163 Ill. 2d 498 (1994). In the present case, the trial court allowed both sides to present evidence as to the value of the remainder, the jury had the opportunity to view the property, and the award is within the range of evidence. The jury awarded the Bolises $33,000 in damages to the remainder. Goodman's estimate of damage to the remainder was $61,377 while Hutchinson's estimate was $8,758. It seems unlikely that the jury awarded damages to the remainder based on a dollar-to-dollar cost-to-cure basis, since its figure is nearly one-half of Goodman's appraisal. The trial court specifically struck any reference to specific amounts from the record. The jury was not to consider these specific cost-to-cure amounts in awarding damages for the remainder. Therefore, the trial court did not abuse its discretion in admitting Goodman's testimony, and the jury's verdict should stand.

IDOT also argues that because the 1.036 acres of land taken already included .728 acres of public right-of-way land, the Bolises were already unable to use that portion of the land for any other purpose. IDOT contends, therefore, that no compensation other than nominal damages should be allowed for this property which was already burdened with an easement, specifically in the nature of a public road. IDOT proffered a jury instruction (No. 15) to this effect based on *Department of Transportation v. Lawler*, 113 Ill. App. 3d 105 (1983); however, the court rejected the instruction. IDOT points out that its expert appraisal witness, Hutchinson, valued the area at $2,800 due to its restricted use. Hutchinson evaluated the existing public road area to be of "nominal" value but refused to place an exact dollar figure on the roadway. Under cross-examination, Hutchinson would not put a dollar figure on "nominal," even though the Bolises' attorney tried to elicit more exact information. IDOT asserts that the attempt to make Hutchinson come up with a specific dollar figure was improper and

likely misled the jury into thinking of the property as separate parts instead of a whole. The Bolises' expert witness, Goodman, evaluated the area with the existing right-of-way at full value and made no adjustments to reduce the value of the property to compensate for burden of the public road. The jury awarded $5,768.55 for the land, almost the full value suggested by Goodman. IDOT contends that the jury improperly failed to make adjustments to the value based on the already existing right-of-way public access road. IDOT argues that the jury should have been instructed, pursuant to *Lawler*, that only a nominal value should be placed on the existing right-of-way roadway. When the trial court refused to give this instruction, IDOT asserts, it was denied a fair trial on the issue of valuation of the existing right-of-way property.

The Bolises argue that IDOT's proposed jury instruction was argumentative and an overstatement of the law. The Bolises contend that IDOT had the opportunity, and indeed took the opportunity, to argue for the jury its position on the "nominal value" issue. The Bolises further point out that this is the only issue IDOT has with the jury instructions given at trial. They argue that IDOT was not prejudiced by the court's refusal to give the instruction.

■ The Bolises have provided the correct standard: the determination of proper jury instructions lies within the sound discretion of the trial court; a reviewing court will not disturb the determination of the trial court absent a clear abuse of·that discretion. *Linn v. Damilano*, 303 Ill. App. 3d 600, 606-07 (1999); *Rowe v. State Bank*, 247 Ill. App. 3d 686, 690 (1993). A new trial will be granted based on a trial court's refusal to give a tendered instruction only when the refusal amounts to a serious prejudice to a party's right to a fair trial. *Linn*, 303 Ill. App. 3d at 607; *Poelker v. Warrensburg-Latham Community Unit School District No. 11*, 251 Ill. App. 3d 270, 278 (1993). Proposed jury instruction number 15 read:

> "You are to consider land taken which lies in an existing right-of-way as having nominal value. No compensation other than nominal damages is given to an owner already burdened with an easement in the nature of a public road."

In *Lawler*, the court addressed a situation where IDOT *refused to make any payment* to landowners for land already encumbered by a right-of-way access road. The court held that there should be payment made for the value of the land encumbered by the easement but acknowledged that the common law allowed only nominal damages for this land. The court declined to reverse the "nominal damages" common law rule. Indeed, the court specifically affirmed the "nominal damages" rule for property with existing right-of-way access roads,

and IDOT is correct in asserting that the instruction could have been given. It was an accurate statement of the current law. Therefore, this court should reverse if, as a result of the court failing to provide the instruction, IDOT suffered prejudice. Here, IDOT could not have suffered prejudice as a result of the court refusing the instruction.

IDOT argues that the portion of the property encumbered by the easement is only worth a "nominal" amount. IDOT's witness, Hutchinson, testified that the Bolises' property was worth $5,600 per acre. He evaluated the 1.036 acres that IDOT sought to condemn to be worth $2,800. At $5,600 per acre, the unencumbered property to be taken, .308 acres, would be worth $1,724.20. That leaves $1,075.80 of the estimated $2,800 for the remaining .72 acres of encumbered acreage. When questioned as to what "nominal value" meant, Hutchinson refused to state a specific dollar figure but said that nominal "mean[t] very little" and "very little value." Black's Law Dictionary defines *nominal damages* as: "A trifling sum awarded when a legal injury is suffered but when there is no substantial loss or injury to be compensated." Black's Law Dictionary 396 (7th ed. 1999). Further, Black's quotes Charles T. McCormick's *Handbook on the Law of Damages*: "Nominal damages are damages awarded for the infraction of a legal right, where the extent of the loss is not shown, or where the right is one not dependent upon loss or damage, as in the case of rights of bodily immunity or rights to have one's material property undisturbed by direct invasion." Black's Law Dictionary 396 (7th ed. 1999). This court holds that $1,075.80 cannot be said to be of very little value nor is it a trifling sum. Therefore, IDOT's own witness did not evaluate or testify that the .72 acres was of "nominal" value. IDOT, accordingly, could not have been prejudiced by the court refusing to instruct the jury to evaluate the acreage "nominally." Finally, the judge cannot instruct the jury on an issue for which no evidence has been provided. See *Kemnitz v. Semrad*, 206 Ill. App. 3d 668 (1990) (when there is no evidence to support an issue, a trial court's refusal to instruct on that issue is proper).

For the foregoing reasons, the jury's award of condemnation damages to the Bolises is affirmed.

Affirmed.

SLATER, P.J., and BRESLIN, J., concur.